1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF CALIFORNIA

7

8   **MARIA G. MORENO, ESTHER L.**          **CASE NO. 1:12-CV-0556 AWI JLT**
    **LOPZ, et al.,**
9                                            **ORDER RE: MOTIONS TO DISMISS**
                    **Plaintiffs**
10

11          **v.**                           **(Docs. 54 and 63)**

12  **CASTLEROCK FARMING AND**
    **TRANSPORT INC., J.L. PADILLA &**
13  **SONS LABOR SERVICES INC., et al.,**

14                  **Defendants**

15                      **I. Background**

16          This case exists in the shadow of a number of previous cases involving the same or similar

17  subject matter (especially <u>Soto v. Castlerock</u>, Civ. Case No. 09-0701, which was ultimately

18  dismissed).  Plaintiffs are various farm laborers who worked for farm labor contractors ("FLCs")

19  on certain table grape vineyards in Tulare and Kern Counties.  Plaintiffs seek to represent a class

20  of workers, alleging that their employers violated a number of California labor laws, California

21  unfair competition law, and the federal Migrant and Seasonal Agricultural Workers Protection Act

22  ("MSAWPA") by:

23          (a) forcing employees to work pre-shift and post-shift 'off the clock' time without
                compensation;
24
            (b) forcing employees to work a second shift without compensation and without
25              split shift pay, or in the alternative, failing to pay for travel time and incurred
                expenses for work performed off premises;
26
            (c) forcing employees to purchase tools from the employer or otherwise supply
27              their own tools and equipment without reimbursement;

28          (d) enforcing unlawful piece-rate policies that result in unpaid time and unpaid rest

breaks;

(e) failing to pay minimum wages;

(f) failing to pay double minimum wage to employees who provide or are required to purchase their own tools;

(g) failing to authorize and permit proper rest periods of at least (10) minutes per four (4) hours worked or major fraction thereof and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided, as required by California state wage and hour laws;

(h) requiring non-exempt employees to work at least five (5) hours without a meal period and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided;

(i) requiring employees to report to work and if an employee did report for work, but was not put to work or was furnished with less than half said employee's usual or scheduled day's work, paying the employees less than half the usual or scheduled day's work at the employee's regular rate of pay and/or less than the legal minimum;

(j) failing to provide employees with accurate itemized wage statements; and

(k) failing to maintain accurate time-keeping records.

Doc. 45, 9:4-10:1.  The classes Plaintiffs hope to certify consist of:

All persons employed directly or jointly by Castlerock in California as non-exempt hourly and/or piece-rate employees at any time during the period of September 12, 2001 to the present.

All persons employed by J.L. Padilla and Castlerock as non-exempt hourly and/or piece-rate employees at Castlerock vineyards in California at any time during the period of April 10, 2008 to the present.

All persons employed by Melba Nuñez and Castlerock as non-exempt hourly and/or piece-rate employees at Castlerock vineyards in California at any time during the period of April 10, 2008 to the present.

Doc. 45, 11:14-20.

Defendants J.L. Padilla and Sons Labor Service, Inc. ("Padilla FLC") and Melba Nuñez Contracting ("Nuñez FLC") are FLCs which employed Plaintiffs.  Defendant Castlerock Farming and Transport, Inc. ("Castlerock") is a corporation owned by Defendant Albert Good.[1]  Mr. Good also owned the vineyards Plaintiffs worked at.  Castlerock provided business services to Mr. Good in relation to those vineyards.  Which parties qualify as Plaintiffs' employers are disputed in this case.

---

[1] Castlerock and Mr. Good are represented by the same counsel and have been making joint filings in this case.

The operative complaint is the First Amended Complaint.  In this motion to dismiss,

Castlerock and Mr. Good seek six determinations:

> That all putative class claims pled against Castlerock prior to April 10, 2008, be dismissed without leave to amend as time barred;

> That all putative class and personal claims pled against Castlerock after April 10, 2008, be dismissed without leave to amend because Mr. Good, not Castlerock, engaged the FLCs that employed plaintiffs and the putative class members;

> That putative class claims based on allegations that workers were not paid for washing grape trays or were required to purchase or provide their own tools be dismissed without leave to amend because those putative classes were denied certification in Soto;

> That the putative class claim for unpaid piece rate work prior to July 14, 2010, be dismissed without leave to amend as time barred;

> That the PAGA claims of plaintiffs Maria G. Moreno, Esther L. Lopez, Francisco Orozco, Abraham Ortiz, Javier Garcia, and Israel Lopez be dismissed without leave to amend because their administrative notice letters were untimely; and

> That the PAGA claim of plaintiff Florencia Gutierrez be dismissed without leave to amend because (i) she cannot establish that she was jointly employed by Castlerock and (ii) she did not provide the required pre-lawsuit notice to Mr. Good.

Doc. 55, 2:11-26.  Nuñez FLC and Padilla FLC have joined in this motion to dismiss.  Docs. 62 and 64.  Additionally, Padilla FLC has made a separate motion that the PAGA claims should be dismissed because due to a failure to exhaust PAGA administrative procedures. Doc. 63-1, 2:22-3:2.  Plaintiffs oppose both motions.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. Rule Civ. Proc. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013).  However, complaints that

offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The Ninth Circuit has distilled the following principles from Iqbal and Twombly: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013).

Under Federal Rules of Civil Procedure 12(b)(1), a claim may be dismissed for "lack of subject-matter jurisdiction." Fed. Rule Civ. Proc. 12(b)(1). It is a fundamental precept that federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978); K2 Am. Corp. v. Roland Oil & Gas, 653 F.3d 1024, 1027 (9th Cir. 2011). Limits upon federal jurisdiction must not be disregarded or evaded. Jones v. Giles, 741 F.2d 245, 248 (9th Cir. 1984). "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life

Ins. Co., 511 U.S. 375, 377 (1994).  Rule 12(b)(1) motions may be either facial, where the inquiry

is confined to the allegations in the complaint, or factual, where the court is permitted to look

beyond the complaint to extrinsic evidence. See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir.

2014); Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When a defendant

challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and

the court determines whether the factual allegations are sufficient to invoke the court's subject

matter jurisdiction. See Leite, 749 F.3d at 1121; Meyer, 373 F.3d at 1039.  When a defendant

makes a factual challenge "by presenting affidavits or other evidence properly brought before the

court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy

its burden of establishing subject matter jurisdiction." Meyer, 373 F.3d at 1039; see also Leite, 749

F.3d at 1121.  The court need not presume the truthfulness of the plaintiff's allegations under a

factual attack. Wood v. City of San Diego, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011).  The plaintiff

must show by a preponderance of the evidence each requirement for subject-matter jurisdiction,

and as long as the dispute is not intertwined an element of the plaintiff's cause of action, the court

may resolve any factual disputes itself. Leite, 749 F.3d at 1121.

### III. Discussion

**A. Effect of Prior Motion to Dismiss**

Defendants collectively made an earlier motion to dismiss, or in the alternative for a stay,

arguing that the case was duplicative of Soto. Doc. 8.  The stay was granted. Doc. 29.  Subsequent

to the lifting of the stay, the operative first amended complaint was filed. Doc. 45.  Plaintiffs make

a procedural argument that Defendants waived all new arguments in the present motion to dismiss

that were not included in the prior motion to dismiss; they cite as support "Fed. R. Civ. P. 12(h)(g)

(citing Fed. R. Civ. P. 12(g)(2) ("a party that makes a motion under this rule must not make

another motion under this rule raising a defense or objection that was available to the party but

omitted from its earlier motion"); see also United States v. Sadler, 480 F.3d 932, 934 (9th Cir.

2007) ("[I]f not asserted in a responsive pleading, a nonjurisdictional affirmative defense is

deemed either *forfeited or waived*[.]") (emphasis in original)." Doc. 65, 3:27-4:5.  First, the court

notes that United States v. Sadler deals with Federal Rule of Appellate Procedure 4, and the quoted language attributed to the Ninth Circuit does not appear in that opinion (or any other federal opinion as far as can be determined).  Second, the interpretation of the Federal Rules of Civil Procedure in this circumstance is not altogether clear cut.

Fed. Rule Civ. Proc. 12(g)(2) states "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  However, Fed. Rule Civ. Proc. 12(h)(2) states "Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. Rule Civ. Proc. 12(h)(3) states "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.  Further, Fed. R. Civ. Proc. 12(h)(1) makes clear that defenses under Rule 12(b)(2)-(5) are waived they are not properly joined in accordance with Rule 12(g)(2), pointedly excluding subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).  Thus, Rule 12 suggests that challenges to subject matter jurisdiction can be made at any time but that certain defenses based on failure to state a claim should not be brought in a successive motion to dismiss if not raised in the first motion but are not substantively waived.

Some federal courts apply this limitation on successive motions to dismiss for failure to state a claim strictly. See Oliver v. Roquet, 2014 U.S. Dist. LEXIS 121327, *6 (D.N.J. Aug. 28, 2014); CGL, LLC v. Schwab, 2012 U.S. Dist. LEXIS 135534, *10 (E.D. Pa. Sept. 20, 2012). However, the federal district courts of California have not taken this position. See Hamana v. Kholi, 2011 U.S. Dist. LEXIS 123306, *3 (S.D. Cal. Oct. 24, 2011) ("Under Fed. R. Civ. P. 12(g)(2), a defendant can move to dismiss an amended complaint for failure to state a claim based on arguments not raised in its first motion to dismiss"); In re Harmonic, Inc., Sec. Litig., 2006 U.S. Dist. LEXIS 90450, *39-40 (N.D. Cal. Dec. 11, 2006) ("Under Rule 12(h), defenses for failure to state a claim may be presented at any time up to and including trial, and under Rule 12(g), a party does not waive a ground for moving to dismiss for failure to state a claim by not

including that ground in an earlier motion to dismiss"); <u>Wilson-Combs v. Cal. Dep't of Consumer Affairs</u>, 555 F. Supp. 2d 1110, 1113 n.3 (E.D. Cal. 2008); <u>Abarca v. Franklin County Water Dist.</u>, 2009 U.S. Dist. LEXIS 42609, *13 (E.D. Cal. May 18, 2009).  Several federal circuit courts have accepted this more relaxed implementation of Rule 12, or at least found it to be harmless error:

> We are aware of only two federal circuit courts that have addressed the issue....the Seventh Circuit acknowledged that Rule 12(g)(2) requires consolidation of Rule 12 motions, but nonetheless held the district court properly considered the timeliness argument.  Because Rule 12(h)(2) allows parties to bring the defense of failure to state a claim in post-answer motions or at trial, and Rule 12(h)(1) expressly exempts Rule 12(b)(6) motions from its waiver rule, the Seventh Circuit held, 'Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement.'  Under this reading, the prohibition on successive motions in Rule 12(g)(2) is simply inapplicable to motions to dismiss for failure to state a claim made before a responsive pleading under Rule 12(b)(6).
>
> ....
>
> The Third Circuit declined to decide whether the district court 'entertained defendants' motions in technical violation' of Rule 12(g)(2) because 'any error in that regard would be harmless.'  The court noted that even if the arguments could not be raised in a successive 12(b)(6) motion, they could have been brought as a motion for judgment on the pleadings pursuant to Rule 12(c), or at trial.  And because the district court had accepted the plaintiff's factual allegations as true, the Third Circuit reasoned 'it is as though defendants had filed answers admitting those allegations and then filed their motions under Rule 12(c) rather than Rule 12(b)(6).'  According to the Third Circuit, requiring defendants 'to take those additional steps would have served no practical purpose under the circumstances.'  Therefore, it concluded any presumed procedural error was irrelevant to the decision on appeal. We find the Third Circuit's approach persuasive.

<u>Albers v. Bd. of County Comm'rs</u>, 771 F.3d 697, 702-4 (D.C. Cir. 2014), citing <u>Ennenga v. Starns</u>, 677 F.3d 766, 772-73 (7th Cir. 2012) and <u>Walzer v. Muriel Siebert & Co.</u>, 447 Fed. Appx. 377, 384 (3rd Cir. 2011).  This court will follow the practice of other district courts in California and consider newly raised defenses in the successive motion to dismiss on the merits.

**B. Subject Matter Jurisdiction**

One of the new arguments being made is that "Castlerock ceased hiring FLCs in July 2004, long before the limitations period for this suit, and never did business with either of the FLC defendants." Doc. 55, 2:1-2.  Castlerock argues that Plaintiffs lack subject matter jurisdiction over it as a defendant, stating "The Lutz Declaration and exhibits thereto establish that Castlerock could not have been an employer - joint or otherwise - of any worker employed by an FLC subsequent to

1   July 2004.  After July 2004, Mr. Good retained the FLCs directly, including Nuñez and

2   Padilla....Accordingly, Castlerock could not have been a joint employer of plaintiffs or the

3   putative class and all personal and class claims against Castlerock should be dismissed without

4   leave to amend pursuant to Rule 12(b)(1), other than personal claims of Mr. Garcia." Doc. 55,

5   13:23-14:2.[2]

6           The U.S. Supreme Court has held that "the irreducible constitutional minimum of standing

7   contains three elements. First, the plaintiff must have suffered an injury in fact - an invasion of a

8   legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

9   conjectural or hypothetical.  Second, there must be a causal connection between the injury and the

10  conduct complained of - the injury has to be fairly traceable to the challenged action of the

11  defendant, and not the result of the independent action of some third party not before the court.

12  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a

13  favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), citations

14  omitted.  Article III standing is properly challenged under Rule 12(b)(1). Minden Pictures, Inc. v.

15  John Wiley & Sons, Inc., 795 F.3d 997 (9th Cir. 2015).  Some courts regularly treat this sort of

16  argument (that the defendant is the wrong party to be sued) as a failure to state a claim and not as a

17  lack of subject matter jurisdiction. See, e.g. Heinzl v. Starbucks Corp., 2015 U.S. Dist. LEXIS

18  28365, *19-23 (W.D. Pa. Mar. 9, 2015); Roche Capital, LLC v. Delegato, 2012 U.S. Dist. LEXIS

19  69198, *12-14 (D. Md. May 17, 2012).  But others have treated it differently. See, e.g Chamber

20  of Commerce of the United States v. Edmondson, 594 F.3d 742, 773 (10th Cir. 2010) ("We have

21  previously held that a plaintiff lacked standing to bring a claim because the wrong defendant was

22  selected").  The Ninth Circuit has specifically said that whether a defendant constitutes an

23  employer can be a question of subject matter jurisdiction. Trentacosta v. Frontier Pacific Aircraft

24  Industries, Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) ("The district court would have had subject

25  matter jurisdiction over Trentacosta's Jones Act claim only if the defendants had been his

26  employers within the meaning of that Act").  The court will treat this as a question of subject

27

28  [2] Plaintiffs object to consideration of Larry Lutz's declaration. Doc. 65, 7:21-22.  But, since Castlerock is using it in a factual subject matter jurisdiction challenge, extrinsic material can be considered. Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

matter jurisdiction.

Under California law, the status of 'employer' is determined by "whether the principal has the right to control the manner and means by which the worker accomplishes the work—but there are a number of additional factors in the modern equation, including (1) whether the worker is engaged in a distinct occupation or business, (2) whether, considering the kind of occupation and locality, the work is usually done under the principal's direction or by a specialist without supervision, (3) the skill required, (4) whether the principal or worker supplies the instrumentalities, tools, and place of work, (5) the length of time for which the services are to be performed, (6) the method of payment, whether by time or by job, (7) whether the work is part of the principal's regular business, and (8) whether the parties believe they are creating an employer-employee relationship." Estrada v. FedEx Ground Package System, Inc., 154 Cal. App. 4th 1, 10 (Cal. App. 2nd Dist. 2007).  As for federal law under MSAWPA:

> In determining whether or not an employment relationship exists between the agricultural employer/association and the agricultural worker, the ultimate question to be determined is the economic reality-whether the worker is so economically dependent upon the agricultural employer/association as to be considered its employee.
>
> ....
>
> The analysis as to the existence of an employment relationship is not a strict liability or per se determination under which any agricultural employer/association would be found to be an employer merely by retaining or benefiting from the services of a farm labor contractor. The factors set forth in paragraphs (h)(5)(iv)(A) through (G) of this section are illustrative only and are not intended to be exhaustive; other factors may be significant and, if so, should be considered, depending upon the specific circumstances of the relationship among the parties. How the factors are weighed depends upon all of the facts and circumstances. Among the factors to be considered in determining whether or not an employment relationship exists are:
>
> (A) Whether the agricultural employer/association has the power, either alone or through control of the farm labor contractor to direct, control, or supervise the worker(s) or the work performed (such control may be either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties);
>
> (B) Whether the agricultural employer/association has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the worker(s);
>
> (C) The degree of permanency and duration of the relationship of the parties, in the

context of the agricultural activity at issue;

(D) The extent to which the services rendered by the worker(s) are repetitive, rote tasks requiring skills which are acquired with relatively little training;

(E) Whether the activities performed by the worker(s) are an integral part of the overall business operation of the agricultural employer/association;

(F) Whether the work is performed on the agricultural employer/association's premises, rather than on premises owned or controlled by another business entity; and

(G) Whether the agricultural employer/association undertakes responsibilities in relation to the worker(s) which are commonly performed by employers, such as preparing and/or making payroll records, preparing and/or issuing pay checks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment and materials required for the job (taking into account the amount of the investment).

29 CFR § 500.20(h)(5)(iii) and (iv). Joint employment is an in depth analysis. Plaintiffs do not directly address these factors. Instead, they assert that Castlerock qualifies as a joint employer and as they have not yet "conducted discovery on this fact intensive joint employer issue, Defendants' request to dismiss for lack of standing should be denied." Doc. 65, 6:9-21. Castlerock asserts it was not an employer during the relevant time period as the controller states "Beginning in July 2004, Mr. Good contracted directly with the FLCs and Castlerock was no longer part of that business relationship." Doc. 57, 1:17-18. "Instead Castlerock provides professional services to Albert Good, who does business under several DBAs." Doc. 57, 1:6-7. There is no description of what those services are. These assertions do not completely clarify if the professional services Castlerock provided to Mr. Good involved directing the workers in any way. Additionally, the relationship of Mr. Good and Castlerock is not altogether clear. The two appear to be intertwined.

"Where pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." Dichter-Mad Family Partners, LLP v. United States, 709 F.3d 749, 753 (9th Cir. 2013), quoting America West Airlines, Inc. v. GPA Group, Ltd., 877 F.2d 793, 801 (9th Cir. 1989). Other courts dealing with subject matter jurisdiction and the tricky question of joint employer status have allowed for discovery to clarify the relationship between the parties. See Javier H. v. Garcia-Botello, 2011 U.S. Dist. LEXIS 104039, *16-25 (W.D.N.Y. Sept. 11, 2011) (denied class certification for lack of Article III standing but permitted discovery). That appears to be the best solution. Plaintiffs have plead that Castlerock is a joint employer but have not shown it

to be so at this stage; they should be given the opportunity to prove it with the aid of discovery.

The claims against Castlerock will not be dismissed for lack of subject matter jurisdiction at this

time.

**C. Effect of Prior Litigation in <u>Soto</u>**

The present case is intimately intertwined with <u>Soto</u>.  The complaint in <u>Soto</u> made similar

allegations against Castlerock:

> (a) forcing employees to work pre-shift and post-shift 'off the clock' time without compensation;
>
> (b) forcing employees to work a second shift of home-work without compensation and without split shift pay, or in the alternative, failing to pay for travel time and incurred expenses;
>
> (c) forcing employees to purchase tools from the employer or otherwise supply their own tools;
>
> (d) failing to pay minimum wages;
>
> (e) failing to pay double minimum wage to employees who provide or are required to purchase their own tools;
>
> (f) failing to provide non-exempt employees rest periods of at least (10) minutes per four (4) hours worked or major fraction thereof and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided, as required by California state wage and hour laws;
>
> (g) requiring non-exempt employees to work at least five (5) hours without a meal period and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided;
>
> (h) requiring employees to report to work and if an employee did report for work, but was not put to work or was furnished with less than half said employee's usual or scheduled day's work, paid the employee less than half the usual or scheduled day's work at the employee's regular rate of pay and/or less than the legal minimum;
>
> (i) failing to provide employees with accurate itemized wage statements; and
>
> (j) failing to maintain accurate time-keeping records.

Case No. 09-0701, Doc. 1, 4:13-5:9.  Initially, the <u>Soto</u> plaintiffs sought a class comprising of "All

persons who are employed or have been employed or jointly employed by CASTLEROCK in the

State of California who, within four (4) years of the filing of the Complaint in this case, have

worked as non-exempt hourly and/or piece-rate employees." Case No. 09-0701, Doc. 1, 6:22-24.

Soto itself arose directly out of earlier cases which also alleged violations of labor laws suffered

by farmworkers employed by Castlerock.  In 2011, the plaintiffs in Soto sought leave to amend to

add Javier Garcia as an additional class representative. Case No. 09-0701, Doc. 54.  Judge

Thurston laid out the history of the litigation noting that Soto was the third in a serial line of class

action suits against Castlerock involving the same subject matter which had collectively involved

five complaints/amended complaints dating back to 2005; she concluded that the multiple prior

pleadings, undue delay by plaintiffs, and prejudice to defendants justified denying the request to

amend. Case No. 09-0701, Doc. 71.  The Soto plaintiffs later filed a motion seeking certification

of only two classes:

> 1. The Trays Class: All employees of Golden Grain Farm Labor Contractor who
> worked at Castlerock Vineyards from 11/9/2001 to August 2004 and were required
> to wash grape trays at home without compensation.
>
> 2. The Tools Class: All employees of Golden Grain Farm Labor Contractor who
> worked at Castlerock Vineyards from 11/9/2001 to August 2004 and were forced to
> purchase, without reimbursement, tools and necessary equipment to perform their
> jobs.

Case No. 09-0701, Doc. 146, 2:15-21.  Class certification was denied as to both classes. Case No.

09-0701, Doc. 173.  Given this history, Defendants raise two related issues: whether certain

potential classes are barred because class certification was denied in Soto and whether class claims

can relate back to Soto for purposes of statute of limitations.


**1. Unsuccessful Class Certification in Soto**

At the hearing on June 17, 2014, Judge Thurston told Plaintiffs "you're not permitted to go

back and attempt to rehash what failed in Soto." Doc. 67, 3:20-21.   Judge Thurston was restating

the rule that a denial of class certification due to a reason that is not specific to that case (e.g.

unsuitable named plaintiff or class counsel) has preclusive effect on subsequent attempts at

certifying the same class. See Sawyer v. Atlas Heating & Sheet Metal Works, Inc., 642 F.3d 560,

564 (7th Cir. 2011) ("If, after concluding that the plaintiff would be an adequate representative of

the class, the court denies certification for a reason that would be equally applicable to any later

1   suit—for example, that the supposed victims are too few to justify class litigation, that a common

2   question does not predominate, or that person-specific issues would make class treatment

3   unmanageable—then members of the asserted class are bound by that decision"). In Soto, the tray

4   and tools classes failed due to a lack of commonality. The evidence showed that there were

5   different practices not only between different teams lead by different forepersons, but also

6   different practices within each team.

7       Castlerock has interpreted the result of that hearing to be "the Court advised plaintiffs'

8   counsel that any amended complaint should omit class claims alleging that Castlerock forced

9   employees to purchase tools or wash grape trays 'off the clock,' because those claims had been

10   denied certification in Soto. Plaintiffs ignored the Court: the amended complaint pleads these

11   claims in the same manner as in Soto." Doc. 55, 14:7-11. In response, Plaintiffs clarify that "in

12   the Soto matter, the Court addressed only 'The Tray Class' and 'The Tools Class' regarding

13   Golden Grain as a joint employer with Castlerock. In contrast, here, the Moreno Plaintiffs do not

14   seek to certify any tray and tool classes against Golden Grain." Doc. 65, 13:25-14:3. Plaintiffs

15   also state that they "do not intend to pursue the 'Trays Class' or 'Tools Class' that the Soto action

16   pursued against Golden Grain, and even as to any of Castlerock's joint employers, such as

17   Defendant Padilla." Doc. 66, 10:13-15. Plaintiffs also state that they "do not seek tray and tool

18   class claims against Defendants." Doc. 65, 14:27-28.

19       The court thus interprets Plaintiffs as giving up their attempt to certify any class action

20   based on trays or tools against all the Defendants. As the operative complaint does include factual

21   allegations about washing trays without compensation and enforced purchase of tools without

22   reimbursement, Defendants' motion to dismiss those claims are granted.

23

24   **2. Tolling**

25       This case includes claims under MSAWPA, California labor law, and California unfair

26   competition law. MSAWPA does not have its own statute of limitations; instead, it borrows from

27   "the state limitations period for the most analogous state law cause of action." Barajas v.

28   Bermudez, 43 F.3d 1251, 1257 (9th Cir. 1994). In this case, that would be the various California

labor codes alleged to have been violated.  In general, "An action upon a liability created by statute, other than a penalty or forfeiture" has a three year limitations period. Cal. Code Civ. Proc. § 338(a).  However, California unfair competition law has a limitations period of four years. Cal. Bus. & Prof. Code § 17208.  Four years is the maximum applicable limitations period.

Defendants seek to have the statute of limitations calculated based on the filing dates of this case.  Plaintiffs seek relation back to the filing of Soto and the earlier cases, asserting that "The Class Period in this case is from September 12, 2001 to the present." Doc. 45, 1:26-28.

Preliminarily, Plaintiffs assert that this court's prior orders compels the conclusion that tolling be applied:

> Moreover, this Court has already implicitly held that the Plaintiffs' suit was co-extensive in time with the Soto suit. This Court explained, '[i]f the class in Soto is certified as narrow, then the Moreno Plaintiffs can move forward to represent all other workers at Castlerock facilities.  Indeed, all pre-class certification discovery received by Silvestre Soto could be directly given to the Moreno Plaintiffs to save time and effort in that circumstance.  If the class certified in Soto is wide, then Moreno would probably be considered duplicative and subject to dismissal.' Order, Docket No. 29 at 4.  Because the Court held that in the context of a narrow class in Soto, Plaintiffs here could move forward on the entirety of the claim, it necessarily held that the Plaintiffs had tolled their class claims.  This is further true because the Court explained that 'all preclass certification' would be relevant in that instance, something that would only be true if Plaintiffs' class claims were tolled. Id.

Doc. 65, 11:20-12:3.  Plaintiffs have misconstrued the effect of the prior order.  It was not ruling on the statute of limitation applicable to this case but rather finding that the two cases were similar enough to justify staying the present case pending the outcome of Soto.  The quoted language noted that Soto plaintiffs appeared to have sought and received discovery that covered employment practices through 2011. See Case No. 09-0701, Doc. 61 and Doc. 38-1, 3:1-3.  As that also covered the period that would clearly be within the statute of limitations for this suit based on a filing date of 2012, that discovery would also be relevant to class certification in this suit given the close connection between the two cases.  The discussion of wide vs. narrow class certification has been discussed above.  Plaintiffs have also not brought up the very next sentence in the earlier order which stated "If class certification is denied for some other reason not having to do with Silvestre Soto's status, then Moreno may or may not be able to proceed depending upon the specific circumstance." Doc. 29, 4:14-16.  The earlier order did not resolve the question of

1  tolling.

2         Class actions, even when class certification fails, can toll certain statute of limitations for

3  later filed cases: "the commencement of a class action suspends the applicable statute of

4  limitations as to all asserted members of the class who would have been parties had the suit been

5  permitted to continue as a class action." Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554

6  (1974); see also Crown v. Parker, 462 U.S. 345, 350 (1983).  However, this tolling was understood

7  to only apply to subsequent claims brought as individual actions and not to later class actions.

8  Robbin v. Fluor Corp., 835 F.2d 213, 214 (9th Cir. 1987).  The Eleventh Circuit has explained the

9  rationale for this limitation: "The plaintiffs may not 'piggyback one class action onto another' and

10  thereby engage in endless rounds of litigation in the district court and in this Court over the

11  adequacy of successive named plaintiffs to serve as class representatives.  This case illustrates the

12  wisdom of the rule against piggybacked class actions.  Fifteen years after the Griffin lawsuit was

13  filed, the class action issues are still being litigated, and we decline to adopt any rule that has the

14  potential for prolonging litigation about class representation even further." Griffin v. Singletary,

15  17 F.3d 356, 359 (11th Cir. 1994), citations omitted.

16         The Ninth Circuit then created a narrow exception to this rule when faced with a case

17  having unusual circumstances in Catholic Social Servs. v. INS, 232 F.3d 1139 (9th Cir. 2000).  In

18  the earlier class action, class certification was granted.  Then, while the case was on appeal, new

19  legislation was passed which stripped the courts of jurisdiction over the claims of some class

20  members, including the named plaintiffs.  The three judge panel in the earlier class action directed

21  that the case be dismissed.  Facing this issue on appeal of the subsequent class action, the Ninth

22  Circuit allowed the later class action to relate back to the earlier for statute of limitations purposes.

23  The en banc majority criticized the earlier panel's decision, stating that "rather than remand to the

24  district court to allow amendment of the complaint to deal with the new reality that had been

25  created by the enactment of § 377 while the case was on appeal, the panel of this court in CSS V

26  remanded with instructions to dismiss the complaint.  We believe that it would have been by far

27  the better course for the panel in CSS V to remand with instructions to allow amendment of the

28  complaint to satisfy requirements imposed for the first time while the case was on appeal."

1   <u>Catholic Social Servs. v. INS</u>, 232 F.3d 1139, 1146 (9th Cir. 2000).  In that case, allowing

2   amendment rather than forcing a new case to be filed would have avoided the entire issue.

3          <u>Catholic Social Services</u> did not overturn the existing rule set out in <u>Robbin</u>; later courts

4   noted that there were "peculiar reasons justifying tolling in that case." <u>Madani v. Shell Oil Co.</u>,

5   357 Fed. Appx. 158, 159 (9th Cir. 2009).  However, there is a great diversity of opinion as to what

6   the bounds of this exception are:

> Courts have interpreted the holding in <u>Catholic Social Services</u> differently. Some
> courts have concluded that it is strictly limited to its specific facts, i.e., to a
> situation in which a certified class cannot proceed because of a subsequently passed
> statute. See, e.g., <u>Madani v. Shell Oil Co.</u>, CV 08-1283 GHK (JWJx), 2008 U.S.
> Dist. LEXIS 114535, 2008 WL 7856015, *2 (C.D. Cal. July 11, 2008) (noting that
> '[p]laintiffs' argument [that <u>Catholic Social Services</u> permitted tolling] ha[d] the
> effect of allowing this exception, granted on unique facts not present here, to
> swallow the rule clearly expressed in <u>Robbin</u>'). Others have interpreted the case as
> articulating more broadly the principle that tolling is available when plaintiffs in a
> second class action do not seek to relitigate a denial of class certification in an
> earlier class action. See <u>In re American Funds Securities Litigation</u>, 556 F.Supp.2d
> 1100 (C.D. Cal. 2008) (noting that <u>Catholic Social Services</u> 'involved a complex,
> 15-year series of class action lawsuits,' that 'the Circuit held that the case before it
> involved a class that had been properly certified in the first instance and therefore
> did not involve any effort to circumvent a prior ruling of the court or to piggyback
> one class action on another,' and that 'under those circumstances, the statute of
> limitations was tolled') See generally <u>Yang v. Odom</u>, 392 F.3d 97, 107 (3d Cir.
> 2004) ('<u>Catholic Social Services</u> may be read narrowly or broadly. At its narrowest,
> <u>Catholic Social Services</u> is limited to the rare factual scenario in which the
> certification of a class is later abrogated by statute. This reading does not implicate
> the usual case where the class was not certified in the prior action, i.e., cases where
> the suitability of the putative class for class treatment was not reached, either
> because the action was dismissed or abandoned on other grounds. In a more broad
> sense, <u>Catholic Social Services</u> can be read as authority for our holding that class
> claims should be tolled where the district court denies class certification based on
> deficiencies of a class representative, and not on the validity of the class itself').

21   <u>In re Toys "R" Us</u>, 2010 U.S. Dist. LEXIS 133583, *63-64 n.36 (C.D. Cal. Aug. 17, 2010).

22          The U.S. Supreme Court has recently weighed in, finding that "<u>American Pipe</u> tolls the

23   statute of limitations during the pendency of a putative class action, allowing unnamed class

24   members to join the action individually or file individual claims if the class fails. But <u>American</u>

25   <u>Pipe</u> does not permit the maintenance of a follow-on class action past expiration of the [original,

26   un-tolled] statute of limitations….The 'efficiency and economy of litigation' that support tolling

27   of individual claims, [<u>American Pipe</u>], do not support maintenance of untimely successive class

28   actions; any additional class filings should be made early on, soon after the commencement of the

1    first action seeking class certification." China Agritech, Inc. v. Resh, 138 S. Ct. 1800, 1804, 1806

2    (2018) (reversing a Ninth Circuit decision permitting tolling of class action claims).  In essence,

3    the ruling has reaffirmed the conclusion of Robbin.  There has been no further discussion about

4    whether China Agritech has overturned Catholic Social Services.  At a minimum, the U.S.

5    Supreme Court ruling counsels a narrow reading of Catholic Social Services.

6           In the present circumstance, there was no direct denial of class certification in the prior

7    case to trace back to for the claims at issue; the plaintiffs let Soto end without seeking class

8    certification of the potential classes relevant to this case.  In Soto, the plaintiffs realized that the

9    named plaintiffs did not meet the typicality requirement and tried to add Javier Garcia as a class

10   representative. Case. 09-cv-0701, Doc. 54, 2:12-16 ("Plaintiffs seek leave of court to amend the

11   Complaint to add Garcia to address Defendant's concern that the current named Plaintiffs cannot

12   represent a class of workers employed directly by Castlerock or jointly by Castlerock and an FLC

13   other than Golden Grain, as Plaintiffs employment at Castlerock was through Golden Grain and

14   the practices purportedly varied by FLC").  Judge Thurston denied the motion, determining that

15   amendment would be prejudicial to the Defendants.  While there was no direct denial of relevant

16   class certification, there was a ruling on the merits that foreclosed that option.  Relation back

17   should not be used as a means of reviving earlier class action suits that ended due to litigation

18   mistakes.  The en banc Catholic Social Services decision emphasized that tolling was appropriate

19   as "Plaintiffs in this case are not attempting to relitigate an earlier denial of class certification, or

20   to correct a procedural deficiency in an earlier would-be class." Catholic Social Servs. v. INS, 232

21   F.3d 1139, 1149 (9th Cir. 2000).  Similarly, the Northern District of California has interpreted

22   Catholic Social Services through that lens of disallowing a new suit to bypass an older adverse

23   ruling: "Nor is it true that that a second attempt at certification via amended complaint and a

24   second, separately filed action are functionally identical.  In the former situation, the court decides

25   whether plaintiffs should be permitted to amend the complaint and proceed, while a rule

26   permitting tolling whenever plaintiffs decide to file a new action leaves more room for abuse."

27   Dukes v. Wal-Mart Stores, Inc., 2012 U.S. Dist. LEXIS 135554, *22-23 (N.D. Cal. Sept. 21,

28   2012).  Further, the strong language in China Agritech establishes a general rule against tolling of

1   class action claims absent any applicable exception.  Relation back does not apply here given the

2   history of litigation in <u>Soto</u> and this case.

3

4   **D. Statute of Limitations of Piece Rate Rest Period Claims**

5           This case was filed on April 10, 2012. Doc. 1.  Given the four year limitations period, the

6   applicable class period began on April 10, 2008.  The First Amended Complaint was filed on July

7   14, 2014. Doc. 45.  In it, Plaintiffs added an allegation that "80. Further, piece rate employees

8   were not paid a separate hourly rate for rest periods. With respect to piece rate workers, therefore,

9   DEFENDANTS failed to authorize and permit *paid* rest periods." Doc. 45, 23:20-22.  Defendants

10  argue that the applicable class period for this claim begins on July 14, 2010 rather than April 10,

11  2008.  Castlerock asserts "Plaintiffs' new claim does not relate back to their initial complaint

12  because it is based on new facts....complaint alleged initially that defendants failed to provide

13  piece-rate workers with rest breaks; plaintiffs now allege that defendants provided rest breaks, but

14  failed to pay an hourly rate during those breaks." Doc. 55, 14:21-15:5.

15          Plaintiffs disagree that the allegation states new facts and that the claim was part of the

16  original complaint. Doc. 65, 16:13-16.  Specifically, the original complaint included the language:

17          22. At all relevant times DEFENDANTS maintained and enforced against Class
            members the following unlawful practices and policies, in violation of California
18          state wage and hour laws:....
            (d) enforcing unlawful piece-rate policies that result in unpaid time and unpaid rest
19          breaks;
            (e) failing to pay minimum wages
20
21          ....

22          26. At all relevant times, DEFENDANTS' enforcement of unlawful piece-rate
            policies was willful and deliberate, and their requirement that non-exempt
23          employees work 'off the clock' and without compensation, work through meal and
            rest periods without paying legal compensation for failure to provide rest or meal
24          periods

25          ....

26          [33.] (g) Whether Defendants violated the California Labor Code and applicable
            wage orders by enforcing piece-rate policies that do not compensate for all hours
27          worked or rest breaks

28  Doc. 1, 7:20-8:5, 9:9-12, 11:20-22.  These assertions do appear to include allegations that rest

breaks were not provided and that rest breaks were provided but not compensated for.

Under the federal rules, "An amendment to a pleading relates back to the date of the original pleading when:…(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. Rule Civ. Proc. 15(c)(1).  The Central District of California has clearly summarized the standard as:

> When a plaintiff seeks to amend a complaint to state a new claim against an original defendant...the district court...compares the original complaint with the amended complaint and decides whether the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading. In making this decision, the court considers whether the 'allegations of a new theory in an amended complaint...involve[ ] the same transaction, occurrence, or core of operative facts involved in the original claim.' <u>Percy v. San Francisco General Hosp.</u>, 841 F.2d 975, 978 (9th Cir. 1988) (citation omitted). The key question is whether the operative facts are similar enough to 'impart fair notice of the transaction, occurrence, or conduct called into question.' <u>Martell v. Trilogy Ltd.</u>, 872 F.2d 322, 327 (9th Cir. 1989). The Ninth Circuit has made clear that the emphasis is not on the legal theory asserted by Plaintiff, but rather on the operative facts of the claim. <u>FDIC v. Jackson</u>, 133 F.3d 694, 702 (9th Cir 1998).

<u>Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.</u>, 802 F. Supp. 2d 1125, 1133 (C.D. Cal. 2011).  In this case, the original complaint gave Defendants adequate notice of the facts that underlie the claim.  The new allegations provide a rewording of the claim that clarified the issue Plaintiffs are complaining of.  At a minimum, the original language provided fair notice of the transaction called into question.  The piece rate rest period claim relates back to the original; the applicable class period began on April 10, 2008.

**E. PAGA Claims**

Plaintiffs seek penalties under Cal. Lab. Code § 2699(a) and (f) for multiple alleged violations of the California Labor Code under PAGA, which allows them to proceed under a quasi class action representative basis. Doc. 45, 29:10-30:19.  PAGA claims required certain administrative procedures to be completed before a plaintiff could file suit.  "[A]ny provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency…for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or

former employees pursuant to the procedures specified in Section 2699.3." Cal. Lab. Code § 2699 (2012).  The key step at issue in this case is giving formal notice to both the LWDA and the employer through certified mail ("PAGA Notice"): "A civil action by an aggrieved employee pursuant to subdivision (a) or (f) of Section 2699 alleging a violation of any provision listed in Section 2699.5 shall commence only after the following requirements have been met....The aggrieved employee or representative shall give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation." Cal. Lab. Code §2699.3(a) (2012).  The violations for which Plaintiffs seek PAGA recovery appear be listed in Cal. Lab. Code § 2699.5 (2012).  PAGA also contains a clause permitting automatic amendment, which can act to further extend the deadline for filing: "Notwithstanding any other provision of law, a plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part." Cal. Lab. Code §2699.3(c) (2012).

In this motion, the parties dispute whether any objections to the cause of action have been waived, the statute of limitations, and the adequacy of notice to employers of Labor Code violations.

**1. Stipulation Between the Parties**

Plaintiffs argue that Defendants stipulated to not opposing PAGA claims due to untimeliness. Doc. 66, 1:18-2:9.  Specifically, they point to a prior order issued by Judge Thurston on September 26, 2012 which states:

> Though Plaintiffs contend that they would suffer prejudice if forced to re-file their motion to amend, the current motion is a mere four pages long.  Thus, the burden appears minor.  Moreover, Plaintiffs ignore that had they filed their amended complaint, rather than filing an opposition to the motion to dismiss, there would never have been a need to file the motion to amend.  On the other hand, they contend that they must file their amended complaint within 60 days of the administrative determination of the claim and, therefore, they would be prejudiced if the motion is denied.  However, at the hearing, Defendants stipulated that they will not argue a renewed motion to amend on PAGA grounds is untimely, if the renewed motion is filed within a reasonable time of the determination of the motion to dismiss.  Plaintiffs accepted this stipulation as does the Court.

1    Doc. 23, 4:25-28 n.1.  Padilla FLC argues that the stipulation "had nothing to do with whether or

2    not the PAGA [claim] was barred by the applicable statute of limitations, but rather, it applied

3    solely to the timeliness of the filing of the Motion for Leave to File the First Amended

4    Complaint." Doc. 68, 4:4-7.  In support, Padilla FLC points to July 3, 20014 joint stipulation in

5    which the parties agreed that "Rather than challenge amendment on grounds of futility,

6    Defendants will bring a motion or motions pursuant to Rule 12 raising legal objections to the

7    added claim arising under California's Private Attorney General Act (PAGA) and addressing the

8    statute of limitations." Doc. 41, 2:7-10.  Read in context, the September 2012 stipulation made by

9    Defendants was for non-opposition to a renewed motion to amend with respect to the 60 day Cal.

10   Lab. Code §2699.3(c) (2012) limit and not broader questions of PAGA timeliness.  Those other

11   arguments will be considered on the merits.

12

13   **2. Statute of Limitations**

14        PAGA does not have its own statute of limitations.  California's catch all limitations period

15   is one year for "a penalty or forfeiture, if the action is given to an individual, or to an individual

16   and the state, except if the statute imposing it prescribes a different limitation." Cal. Civil Code §

17   340(a).  It is well settled that "The statute of limitations for PAGA claims is one year. (Code Civ.

18   Proc., § 340, subd. (a.).)." Brown v. Ralphs Grocery Co., 28 Cal. App. 5th 824, 839 (Cal. App. 2nd

19   Dist. 2018); see also Cabardo v. Patacsil, 2020 U.S. Dist. LEXIS 84474, *11 (E.D. Cal. May 12,

20   2020); Culley v. Lincare Inc., 236 F. Supp. 3d 1184, 1191 (E.D. Cal. 2017); Jayme v. Checksmart

21   Financial, LLC, 2010 WL 2900333, *2 (E.D. Cal. July 22, 2010); Yadira v. Fernandez, 2011 WL

22   2434043, *5 (N.D. Cal. June 14, 2011); Butterworth v. Am. Eagle Outfitters, 2011 U.S. Dist.

23   LEXIS 119192, *12 (E.D. Cal. Oct. 13, 2011).

24        Plaintiffs argue that part of the PAGA claims are subject instead to a three year statute of

25   limitations: "Binding California Supreme Court authority dictates that Plaintiffs' claims under

26   Labor Code §§ 203 and 256 have a three year statute of limitations." Doc. 65, 19:9-10.  Section

27   203 sets out an individual, private right of action "If an employer willfully fails to pay…any

28   wages of an employee who is discharged or who quits, the wages of the employee shall continue

as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced….Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise." Cal. Lab. Code § 203. Section 256 sets out a related penalty to be pursued by the state: "The Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of Section 203." Cal. Lab. Code § 256.  In contrast to the one year limitations period for penalties and forfeitures, "An action upon a liability created by statute, other than a penalty or forfeiture" is subject to a three year limitations period. Cal. Code Civ. Proc. 338(a).  The California Supreme Court has definitively established that the three year limitations period applies since "the statute of limitations on an action for section 203 penalties tracks the statute of limitations governing actions for unpaid final wages" rather than the statute of limitations for penalties and forfeitures. Pineda v. Bank of Am., N.A., 50 Cal. 4th 1389, 1396 (Cal. 2010).

Using PAGA to proceed on a representative basis, Plaintiffs seek to recover penalties using the three year limitations period that applies to Section 203.  But, no court has interpreted the law in that way.  This argument was raised by Plaintiffs in the prior related case and directly rejected. Soto v. Castlerock Farming & Transp., Inc., 2012 U.S. Dist. LEXIS 53109, *16 (E.D. Cal. Apr. 13, 2012).  "Despite the three year statute of limitations that applies to some of the Labor Code violations listed in §2699.5, a PAGA claim is, by definition, a claim for civil penalties" and subject to a one year statute of limitations. Thomas v. Home Depot USA Inc., 527 F. Supp. 2d 1003, 1008 (N.D. Cal. Sept. 27, 2007); see also Martinez v. Antique & Salvage Liquidators, Inc., 2011 WL 500029, *8 (N.D. Cal. Feb. 8, 2011); Moreno v. Autozone, Inc., 2007 WL 1650942, *4 (N.D. Cal. June 5, 2007) (under PAGA, "the longer statutes of limitations for the underlying cause of actions" do not apply).

**3. PAGA Notice**

Given that the statute of limitations period is one year, Defendants point out that all but one of the named Plaintiffs (Ms. Florencia Gutierrez) provided the PAGA Notice to their

employers more than one year after the end of their employment.[3]  While complying with the

administrative procedure set out in Section 2699.3, the limitations period is tolled. Cal. Lab. Code

§ 2699.3(d) (2012).  Thus, for PAGA claims to be timely, plaintiffs must send the PAGA Notices

within the one year statute of limitations period. Soto v. Castlerock Farming & Transp., Inc., 2012

U.S. Dist. LEXIS 53109, *16-17 (E.D. Cal. Apr. 13, 2012); Gonzalez v. Millard Mall Servs., Inc.,

2012 WL 3629056, *3 (S.D. Cal. Aug. 21, 2012).

Plaintiffs do not challenge the assertion that Plaintiffs Maria Moreno, Esther Lopez,

Francisco Orozco, Abraham Ortiz, Javier Garcia, and Israel Lopez sent their PAGA Notices more

than one year after the end of their employment.   Regarding Ms. Gutierrez, Plaintiffs assert in the

First Amended Complaint that she worked for Castlerock through April 2011. Doc. 45, 4:23-27.

She sent a PAGA Notice to the LWDA on April 11, 2012. Doc. 56, Ex. A.  Padilla FLC, Ms.

Gutierrez's employer, represents that she worked until April 11, 2011 (Doc. 63-1, 3:14-15) which

would make that PAGA Notice timely.  However, she did not send PAGA Notices to the

Defendants until May 22, 2012. Doc. 56, Ex. B; Doc. 66-4.  Since Section 2699 requires "written

notice by certified mail to the Labor and Workforce Development Agency *and the employer*"

(Cal. Lab. Code § 2699.3(a)(1) (2012), emphasis added), Ms. Gutierrez did not exhaust the

administrative procedure requirements in time.  As this exhaustion is a condition precedent to a

PAGA claim, Plaintiffs' PAGA causes of action must be dismissed.

## IV. Order

Defendants' motions to dismiss (Docs. 54 and 63) are GRANTED in part and DENIED in

part.  The following three determinations are established:

> All putative class claims pled against Defendants prior to April 10, 2008, are
> dismissed without leave to amend as time barred;

> Putative class claims based on allegations that workers were not paid for washing

---

[3] The First Amended Complaint alleges that "114. PLAINTIFFS provided pre-lawsuit written notice by certified mail to DEFENDANTS and to the Labor and Workforce Development Agency of the Labor Code and IWC Wage Order violations averred here, under Labor Code § 2699.3." Doc. 45, 30:1-3.  Castlerock and Plaintiffs have provided copies of these notices. Doc. 56, Ex. A; Doc. 66-2; Doc. 66-3; Doc. 66-4.  These notices are considered in resolving this motion as documents incorporated by reference in the complaint. See Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013).

grape trays or were required to purchase or provide their own tools are dismissed without leave to amend because those putative classes were denied certification in Soto; and

The PAGA claims of all named Plaintiffs (Maria G. Moreno, Esther L. Lopez, Francisco Orozco, Abraham Ortiz, Javier Garcia, Israel Lopez, and Florencia Gutierrez) are dismissed without leave to amend because their administrative notice letters were untimely.

IT IS SO ORDERED.

Dated:   March 25, 2022

_____
SENIOR  DISTRICT  JUDGE