1

2

3

4

5

6

7

8         **UNITED STATES DISTRICT COURT**

9         **EASTERN DISTRICT OF CALIFORNIA**

10

11   MARIA G. MORENO, ESTHER L. LOPEZ,        ) Case No.: 1:12-cv-0556 JLT CDB
     FRANCISCO OROZCO, ISRAEL LOPEZ,          )
12   MARCELA LOPEZ, OFELINA PENA, and         ) ORDER GRANTING DEFENDANTS'
     ELVIS PEREZ, on behalf of themselves and all ) MOTION TO DISMISS, WITH LEAVE TO
13   other similarly situated,                 ) AMEND
                                               )
14              Plaintiffs,                    ) (Doc. 175)
                                               )
15        v.                                   )
                                               )
16   CASTLEROCK FARMING AND                    )
     TRANSPORT, INC., J.L. PADILLA & SONS      )
17   LABOR SERVICE, INC., MELBA NUNEZ          )
     CONTRACTING (form unknown), and           )
18   Does 1-20, inclusive,                     )
                                               )
19              Defendants.                    )
                                               )
20   _____ )

21          Maria Moreno, Esther Lopez, Francisco Orozco, Israel Lopez, Marcela Lopez, Ofelina Pena,

22   and Elvis Perez assert they suffered violations of the Migrant and Seasonal Agricultural Worker

23   Protection Act and California wage-and-hour laws.  Plaintiffs seek to hold Castlerock Farming and

24   Transport, Albert Good, J.L. Padilla & Sons Labor Service, and Melba Nuñez Contracting liable for

25   the violations, stating claims on behalf of themselves and others similarly situated.  (Doc. 173.)

26          Defendants Castlerock and Good seek dismissal of Plaintiff's third amended complaint

27   pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 175 at 2.)  In the alternative,

28   Defendants seek to strike portions of Plaintiffs' complaint—including all class allegations—pursuant

                                               1

1  to Rule 12(f).  (*Id*.)  Plaintiffs oppose the motion, asserting the allegations are sufficient to support

2  each of their claims and that Defendants waived their right to challenge the pleadings.  (*See generally*

3  Doc. 180 at 6-21.)  Plaintiffs also assert the motion to strike is premature.  (*Id.* at 21.)

4      For the reasons set forth below, the motion to dismiss is **GRANTED**, and the third amended

5  complaint is dismissed with leave to amend.

6  **I.    Allegations[1]**

7      Plaintiffs report they "are or were agricultural workers, within the meaning of 29 U.S.C. §

8  1802(10)."  (Doc. 173 at 3, ¶ 7.)  According to Plaintiffs, "Castlerock directly or jointly employed"

9  each of the named plaintiffs, and "owned, controlled, or operated a business or establishment that

10  employed persons within the meaning of IWC Order No. 14, 8 California Code of Regulations §

11  11140 and AWPA."  (*Id.* at 6, ¶ 16.)

12      Maria Moreno asserts that "[a]t relevant times, she has been employed directly by Castlerock,

13  or jointly by Castlerock and various farm labor contractors, including Melba Nuñez Contracting, to

14  provide labor on land that, on information and belief, has been owned, leased, and/or operated by

15  Castlerock in and around Kern and Tulare Counties."  (Doc. 173 at 3, ¶ 8.)  Plaintiffs assert Moreno

16  was "employed at Castlerock as a non-exempt employee," to "perform[] agricultural work at various

17  times during the Class Period through 2010, punctuated by seasonal and other types of layoffs."  (*Id.*)

18  Plaintiffs allege that Moreno was paid "at agreed-upon hourly and/or piece wage rates that varied over

19  her period of employment."  (*Id.*)

20      Esther Lopez also alleges that "[a]t relevant times, she has been employed directly by

21  Castlerock, or jointly by Castlerock and various farm labor contractors, including Melba Nuñez

22  Contracting, to provide labor on land that, on information and belief, has been owned, leased, and/or

23  operated by Castlerock in and around Kern and Tulare Counties.  (Doc. 173 at 3, ¶ 9.)  Plaintiffs that

24  Esther Lopez "has been employed at Castlerock as a non-exempt employee," "performing agricultural

25  work in 2010, punctuated by seasonal and other types of layoffs."  (*Id.* at 3-4, ¶ 9.)  Plaintiffs allege

26  Esther Lopez was paid "at agreed-upon hourly and/or piece wage rates that varied over her period of

27  employment." (*Id.* at 4, ¶ 9.)

28

---

[1] In quoting the allegations, the Court omits the emphasis on the parties' names found in the TAC.

Francisco Orozco asserts that he "perform[ed] agricultural work" at Castlerock, "in or around 2010 and 2011, punctuated by seasonal and other types of lay-offs." (Doc. 173 at 4, ¶ 10.) Plaintiffs allege that Francisco Orozco was "employed directly by Castlerock, or jointly by Castlerock and various farm labor contractors, including Melba Nuñez Contracting, to provide labor on land that, on information and belief, has been owned, leased, and/or operated by Castlerock in and around Kern and Tulare Counties." (*Id.*) According to Plaintiffs, Francisco Orozco was "employed at Castlerock as a non-exempt employee," and was paid "at agreed-upon hourly and/or piece rates that varied over his period of employment." (*Id.*)

Israel Lopez reports that he "worked at Castlerock ... at various times during the [relevant period] through February 2011." (Doc. 173 at 4, ¶ 4.) Plaintiffs allege Israel Lopez was "employed at Castlerock as a non-except employee" and was paid "at agreed-upon piece rates that varied over his period of employment," which was "punctuated by season and other types of lay-offs." (*Id.*) Plaintiffs assert that Israel Lopez was "employed directly by Castlerock, or jointly by Castlerock and various farm labor contractors, including Melba Nuñez Contracting" to perform agricultural work "on land that, on information and belief, has been owned, leased, and/or operated by Castlerock in and around Kern and Tulare Counties." (*Id.*)

Marcela Lopez asserts that she performed agricultural "work[] at Castlerock," from 2008 to 2014, "punctuated by seasonal and other types of lay-offs." (Doc. 173 at 12, ¶ 12.) Plaintiffs allege that she was "employed directly by Castlerock, or jointly by Castlerock and various farm labor contractors, including J.L. Padilla & Sons Labor Service Inc[.], to provide labor on land that, on information and belief, has been owned, leased, and/or operated by Castlerock in and around Kern and Tulare Counties." (*Id.*) Plaintiffs assert that Marcela Lopez worked "at agreed-upon piece rates that varied over her period of employment." (*Id.*)

Ofelina Pena alleges that "[a]t relevant times, he has been employed directly by Castlerock, or jointly by Castlerock and various farm labor contractors, including J.L. Padilla & Sons Labor Service Inc[.], to provide labor on land that, on information and belief, has been owned, leased, and/or operated by Castlerock in and around Kern and Tulare Counties." (Doc. 173 at 5, ¶ 13.) Plaintiffs contend Pena worked "as a non-exempt employee," "performing agricultural work at various times

1    during the [relevant period], punctuated by seasonal and other types of layoffs." (*Id.*) Plaintiffs

2    assert that Pena was paid "agreed-upon piece rates that varied over his period of employment." (*Id.*)

3         Elvis Perez reports that he did "agricultural work" at Castlerock, "including from 2008 to

4    2012 …, punctuated by seasonal and other types of lay-offs." (Doc. 173 at 6, ¶ 14.) Plaintiffs allege

5    that Elvis Perez was "employed directly by Castlerock, or jointly by Castlerock and various farm

6    labor contractors, including J.L. Padilla & Sons Labor Service Inc[.], to provide labor on land that, on

7    information and belief, has been owned, leased, and/or operated by Castlerock in and around Kern

8    and Tulare Counties." (*Id.* at 5, ¶ 14.) Plaintiffs allege that Elvis Perez was paid "agreed-upon piece

9    rates that varied over his period of employment." (*Id.* at 6, ¶ 14.)

10        Plaintiffs assert that Albert Good, the majority owner of Castlerock, owned the vineyards

11   where they worked and "directly paid for labor services and contracted with farm labor contractors

12   providing services at Castlerock Vineyards." (Doc. 173 at 8, ¶ 19.) They contend, "Good directly or

13   jointly employed Plaintiffs Maria G. Moreno, Esther L. Lopez, Francisco Orozco, Israel Lopez, and

14   similarly situated persons as non-exempt employees." (*Id.* at 9, ¶ 19.)

15        According to Plaintiffs, "each Defendant acted in all respects pertinent to this action as the

16   agent of the other Defendants, carried out a joint scheme, business plan, or policy in all respects

17   pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants."

18   (Doc. 173 at 9, ¶ 20.) Plaintiffs allege that "Castlerock and [] Good exercised control over wages,

19   hours, or working conditions of employees obtained through FLCs, including but not limited to J.L.

20   Padilla and Melba Nuñez, during the relevant time, either indirectly, directly, or through an agent or

21   other person." (*Id.*) Plaintiffs assert:

22              For example, Castlerock supervisors would instruct FLC employees that
                they worked for Castlerock and would instruct FLC forepersons and
23              FLC employees how Castlerock expected the FLC employees to perform
                their job duties. Castlerock supervisors also had the ability to lay off
24              FLC employees and would instruct FLC forepersons which FLC
                employees to lay off.
25

26   (*Id.*, ¶ 21.)

27        Plaintiffs seek to proceed with individual claims as well as representation of "non-exempt

28   agricultural employees employed, or formerly employed, by each of the Defendants within the state

4

of California." (Doc. 173 at 10, ¶ 23.)  Plaintiffs contend that Defendants engaged in "a pattern of misconduct and wrongdoing that has characterized the labor system utilized at Castlerock …, where unpaid and improperly paid labor" "are commonplace and regular practices." (*Id.*, ¶ 24.)  Plaintiffs allege such practices and policies included:

> (a) forcing employees to work pre-shift and post-shift "off the clock" time without compensation;

> (b) forcing employees to work a second shift without compensation and without split shift pay, or in the alternative, failing to pay for travel time and incurred expenses for work performed off premises;

> (c) enforcing unlawful piece-rate policies that result in unpaid time and unpaid rest breaks. For example, Plaintiffs and Class member employees were not paid at least minimum wage for all hours worked, including non-productive time, as a result of Defendants['] failure to record and compensate Plaintiffs and Class member employees for pre-shift and post-shift "off the clock" time.  Defendants also failed to separately record and compensate rest breaks from Plaintiffs' and Class member employees' piece-rate units.

> (d) failing to pay minimum wages. For example, Defendants failed to record and compensate Plaintiffs and Class member employees at least minimum wage for pre-shift and post-shift "off the clock" time and overtime premium wages where employees worked more than 8 hours in a day or 40 hours in a workweek and were not compensated for the pre-shift and post-shift "off the clock" time.

> (e) failing to authorize and permit proper rest periods of at least (10) minutes per four (4) hours worked or a major fraction thereof and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided, as required by California state wage and hour laws. For example, Plaintiffs and Class member employees were not allowed to take a rest break because Plaintiffs and Class member employees were pressured to complete their tasks before taking their rest break.

> (f) requiring Plaintiffs and Class member employees to work at least five (5) hours without a meal period and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.  For example, Plaintiffs and Class member employees were not allowed to take a meal break before the fifth hour because Plaintiffs and Class member employees were pressured to complete their tasks before taking their meal break.

> (g) requiring employees to report to work and if an employee did report for work, but was not put to work or was furnished with less than half said employee's usual or scheduled day's work, paying the employees less than half the usual or scheduled day's work at the employee's regular rate of pay and/or less than the legal minimum;

1    (h) failing to provide employees with accurate itemized wage
      statements; and

2    (i) failing to maintain accurate time-keeping records.

3  (Doc. 173 at 10-11, ¶ 25.)

4        According to Plaintiffs, "Defendants were on notice of the improprieties alleged by their

5  employees … and intentionally refused to rectify their unlawful policies."  (Doc. 173 at 12, ¶ 29.)  In

6  addition, Plaintiffs contend Defendants' actions were "willful and deliberate" related to the

7  enforcement of the piece-rate policies and the "requirement[s] that non-exempt employees work 'off

8  the clock' and without compensation, [and] work through meal and rest periods without paying legal

9  compensation for failure to provide rest or meal periods."  (*Id.*, ¶ 30.)

10       Plaintiffs state the following claims for relief against all Defendants: (1) violation of the

11  Migrant and Seasonal Agricultural Worker Protection Act; (2) failure to pay wages, including

12  minimum wages and overtime wages; (3) failure to pay reporting time wages; (4) failure to provide

13  meal periods or compensation in lieu thereof; (5) failure to provide rest periods or compensation in

14  lieu thereof; (6) failure to pay wages due at termination; (7) knowing and intentional failure to

15  comply with itemized employee wage statement provisions; (8) violation of California's Unfair

16  Competition Law.  (Doc. 173 at 17-32.)

17  **II.    Motions to Dismiss**

18       A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d

19  729, 732 (9th Cir. 2001.  In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court

20  "may generally consider only allegations contained in the pleadings, exhibits attached to the

21  complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of*

22  *Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Dismissal of a

23  claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or

24  sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

25  F.3d 1097, 1104 (9th Cir. 2008).

26       "To survive a motion to dismiss, a complaint must contain sufficient factual matter… to 'state

27  a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

28  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).  The Court must accept the allegations of a complaint as true when addressing a motion to dismiss.  *Iqbal*, 556 U.S. at 678; *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).  The Court must also construe the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, legal conclusions need not be taken as true when "cast in the form of factual allegations."  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

To the extent pleading deficiencies can be cured by a plaintiff alleging additional facts, a motion to dismiss should be granted with leave to amend.  *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).  On the other hand, leave to amend may be denied where amendment would be futile.  *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.     Requests to Strike

Pursuant to Rule 12(f), a district court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A "redundant" matter is comprised "of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied."  *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the

1    issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*

2    *grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at

3    706-07, 711 (1990)).

4        The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must

5    arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v.*

6    *A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983). Generally, motions to strike "are disfavored and

7    infrequently granted." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005). The

8    Court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans*

9    *Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000). "If there is any doubt whether the portion to be

10   stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor*

11   *Bolt, Inc. v. IHI, Inc*., 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

12   **IV.    Discussion and Analysis**

13       Defendants Castlerock and Good seek dismissal of the TAC, asserting the pleading includes

14   "non-specific allegations regarding Defendants' alleged (1) employment of Plaintiffs and putative

15   class members and (2) acts committed in violation of the California Labor code fall short of what is

16   required to plead wage-and-hour claims and joint employment." (*See* Doc. 175 at 2.) In the

17   alternative, Defendants request the Court strike the class allegations. (*Id.*) Plaintiffs argue the Court

18   should deny the request, asserting TAC is "an adequately pled 34-page pleading that far exceeds what

19   is required." (*See* Doc. 180 at 23.)

20       **A.    Waiver**

21       As an initial matter, Plaintiffs argue that "Defendants waived pleading issues by failing to

22   raise [them] in previous motions." (Doc. 180 at 8, emphasis omitted.) Previously, Plaintiffs filed a

23   motion to amend the FAC under Rule 15, seeking leave to file a second amended complaint "to clear

24   up the claims and plaintiffs that were dismissed, as well as to add … [three] Plaintiffs who worked

25   for Defendant Padilla during the relevant class period." (Doc. 148-1 at 2, ¶ 5; *see also* Doc. 148.)

26   Castlerock and Good opposed the motion, and Padilla joined the opposition. (Docs. 160, 161.)

27   Defendants argued the pleading standards of Rule 15 did not apply, and Plaintiffs should not be

28   permitted to amend the complaint pursuant to Rule 16 because Plaintiffs were not diligent in seeking

1  amendment following the death of Ms. Gutierrez, and Defendants would suffer prejudice.  (Doc. 160

2  at 6-10.)  Plaintiffs now argue that "Defendants had the opportunity to raise pleading deficiencies

3  when Plaintiffs moved for leave to file their TAC, but Defendants failed to do so."[2]  (Doc. 180 at 8,

4  citing Doc. 160.)  Thus, Plaintiffs now contend "Defendants have waived those arguments."  (*Id.*)

5  It is indisputable that after the Court granted leave for Plaintiffs to file the second amended

6  complaint under Rule 15, Castlerock and Good questioned whether the allegations were sufficient to

7  state a claim and initiated a meet-and-confer with Plaintiffs' counsel regarding filing a motion to

8  dismiss under Rule 12(b)(6) shortly thereafter.  (*See* Doc. 70 at 3; Doc. 171 at 1-2; Doc. 175 at 43-

9  44.)  Following the meet-and confer-efforts, Plaintiffs "agreed to file a third amended complaint."[3]

10  (Doc. 171 at 2.)  Although Defendants did not oppose Plaintiffs' *motion* to file the SAC on futility

11  grounds—instead arguing the standards of Rule 16 applied—Defendants' challenge to the allegations

12  as insufficient to state a claim resulted in Plaintiffs filing the TAC.

13  Regardless, the right to challenge a complaint for failure to state a claim is preserved under

14  Rule 12(h)(2) of the Federal Rules of Civil Procedure.  Courts have determined that challenges to

15  amended pleadings under Rule 12(b)(6) are not waived based upon a failure to raise the same

16  challenge in prior motions or to other pleadings.  *See, e.g., Cuviello v. City of Vallejo*, 2020 WL

17  6728796, at *4-5 (E.D. Cal. Nov. 16, 2020) (rejecting the plaintiff's argument that the defendant

18  waived the right to file a motion to dismiss for failure to state a claim "by not asserting [such

19  argument] in response to plaintiff's original complaint"); *Hamana v. Kholi*, 2011 WL 5077614, *1

20  (S.D. Cal. Oct. 25, 2011) ("a defense of failure to state a claim is not waived by the failure to raise it

21  in a first motion"); *Doe v. Sigma Chi Int'l Fraternity, Inc.*, 2025 WL 2203001, at *6 (N.D.N.Y. Aug.

22  4, 2025) ("Because a defendant cannot waive 12(b)(6) arguments, they have not waived their

23  arguments regarding the sufficiency of plaintiff's allegations"); *see also Solie v. Health Care@Home*

24  *LLC*, 2020 WL 4501486, at *1 n.1 (D. Az. Aug. 5, 2020) (rejecting the plaintiffs' argument that the

25

26  _____

   [2] Presumably, Plaintiffs refer to the *SAC*, because the TAC was filed pursuant to stipulation of the parties
27  rather than a motion. (Docs. 171, 172.)

28  [3] Towards this end, Plaintiff's assertion that "the Court already reviewed [the] TAC and found that is not
   futile" (Doc. 180 at 7) is contradicted by the record.  The Court did not review the TAC, but rather permitted
   the filing based upon the stipulation of the parties.  (Docs. 171, 172.)

1   defendants "waived their right" to challenge a claim in the plaintiffs' third amended complaint where

2   the defendants did not raise the same issue in their motion to dismiss the second amended complaint,

3   and finding "the Rule 12(b)(6) defense is not waived for failure to raise it in the [prior] motion").

4   Consequently, the argument that Defendants' waived their right to challenge the TAC under Rule

5   12(b)(6) for failure to state a claim is unavailing.[4]

6       **B.    Inherent authority of the Court**

7       Plaintiffs note that "[a] district court has inherent power to control the disposition of the causes

8   on its docket in a manner which will promote economy of time and effort for itself, for counsel, and

9   for litigants."  (Doc. 180 at 8, quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).)

10  Plaintiffs request that "the Court to exercise its inherent power to control its docket and deny

11  Defendants' motion to dismiss, requiring them instead to resolve the issues on summary judgment as

12  previously agreed."  (*Id.*, citing *CMAX*, 300 F.2d at 686, *Rogers v. JP Morgan Chase Bank*, 2022 WL

13  17361234, at *1 (E.D. Cal. Nov. 17, 2022).)  Plaintiffs observe this Court previously exercised its

14  inherent power "to deny a motion to deny a motion to dismiss" in *Rogers*.  (*Id.*)

15      Notably, Plaintiffs do not discuss the Court's decision in *Rogers* or show the litigation posture

16  in this matter is similar.  In *Rogers*, the plaintiff was identified as "a serial litigant," who had filed

17  three prior actions related to foreclosure on her home.  *Id.*, 2022 WL 17361234, at *1.  Rogers filed a

18  motion for a temporary restraining order against the defendant, seeking to enjoin the execution of an

19  unlawful detainer action.  *Id.*  The Court issued an order denying the TRO and directing Rogers to

20  show cause why she should not be declared a vexatious litigant and the action should not be dismissed.

21  *Id.*  Rogers then appealed the order dying a TRO to the Ninth Circuit.  While the appeal remained

22  pending, the defendant filed a motion to dismiss.  *Id.*  The Court observed that "issues set forth in

23  defendant's motion are nearly identical to the issues set forth in the court's order to show cause," and

24  the Court was "currently awaiting" a response to the order to show cause.  *Id.*  Thus, the Court denied

25

26  _____

    [4] Moreover, this Court observed that "the Ninth Circuit has adopted a 'very forgiving' approach …, which
27  allows district courts to consider new arguments in successive motions to dismiss under Rule 12(b)(6) in the
    interest of judicial economy."  *Wagnon v. Rocklin Unified Sch. Dist.*, 2021 WL 1214571, at *5 (E.D. Cal. Mar.
28  30, 2021) (quoting *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–18 (9th Cir. 2017)).  This approach
    supports the determination that the Court may consider new arguments that were not previously raised by
    Defendants in prior motions, or their opposition to the motion to amend.

1    the motion to dismiss "in the interest of judicial economy," and indicated it could be "renew[ed] upon

2    resolution of the TRO appeal and plaintiff's response to the OSC."  *Id.*

3         Unlike in *Rogers*, there is not another matter pending that addresses the issues raised by

4    Defendants—including whether the defendants are joint employers and whether Plaintiffs allege facts

5    sufficient to support their claims— such that the pending motion to dismiss is rendered unnecessary.

6    In fact, the parties agreed that Defendants' prior motion for summary judgment regarding joint

7    employment (Doc. 140) was rendered moot by Plaintiffs' filing of the second amended complaint.

8    (Docs. 69, 170.)  Accordingly, reliance upon *Rogers* is misplaced.  The Court declines to deny the

9    motion under its inherent authority to control the docket.

10        **C.    The "Law of the Case" Doctrine**

11        Plaintiffs argue that "Defendants are precluded from relitigating the issue of joint employment

12   before Plaintiffs complete discovery" pursuant to the "law of the case" doctrine.  (Doc. 180 at 8-9.)

13   Defendants dispute the applicability of the doctrine.  (Doc. 181 at 2-3.)

14        Pursuant to the law of the case doctrine, "a court is generally precluded from reconsidering an

15   issue that has already been decided by the same court … in the identical case." *Thomas v. Bible*, 983

16   F.2d 152, 155 (9th Cir. 1993).  "This doctrine has developed to 'maintain consistency and avoid

17   reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Ingle v.*

18   *Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting 18B Wright, Miller & Cooper, *Federal*

19   *Practice and Procedure: Jurisdiction* § 4478, at 637-38 (2002)).  When the doctrine applies, the Court

20   may depart from the law of the case when: "(1) the first decision was clearly erroneous; (2) an

21   intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4)

22   other changed circumstances exist; [or] (5) a manifest injustice would otherwise result." *Thomas*, 983

23   F.2d at 155; *see also Grand Canyon Trust v. Provencio*, 26 F.4th 815, 821 (9th Cir. 2022).

24        Plaintiffs contend that "the parties already litigated the issue of joint employment more than a

25   decade ago when Defendants raised the issue in a previous motion to dismiss."  (Doc. 180 at 8.)

26   Plaintiffs assert, "the Court decided that 'the best solution' was to allow Plaintiffs to conduct

27   discovery regarding the allegations of joint employment."  (*Id.*, citing Doc. 80 at 9-11.)  Plaintiff

28   contend that the Court "recognized the lack of clarity regarding relationship between Castlerock and

1    Mr. Good," and "it would take discovery to disentangle their specific actions." (*Id.*, citing Doc. 80 at

2    10.) Plaintiffs argue that by raising the issue of joint employment in the pending motion, Defendants

3    "ignore this Court's decisions on how to resolve that issue in this case." (*Id.*, emphasis omitted).

4    Plaintiffs contend that because "the Court decided that the joint employment issue must be resolved

5    with discovery when it resolved Defendants' motion to dismiss," Defendants should not be permitted

6    to raise the issue and instead must "allow Plaintiffs to complete discovery into the issue of joint

7    employment as previously decided." (*Id.* at 9.)

8           The Court did not decide the issue of *joint employment* in the order addressing the motions to

9    dismiss the first amended complaint. Rather, the Court found considered the issue of *subject matter*

10   *jurisdiction* and found the information was insufficient to determine whether Castlerock and Good

11   were joint employers, as required for the plaintiffs to have standing for their claims against Castlerock.

12   (*See* Doc. 80 at 7-11; *see also* Doc. 55 at 2.) Indeed, though the Court identified factors related to

13   joint employment under state and federal law, it observed Plaintiffs did "not directly address the[]

14   factors" and the Court did not analyze the factors. (*Id.* at 10.) Because there was not any

15   determination as to joint employment, Defendants are not precluded from raising the issue. *See*

16   *Premier Pools Mgmt. Corp. v. Colony Ins. Co.,* 328 F.Supp.3d 1075, 1083 (E.D. Cal. 2018) ("Law of

17   the case does not apply to issues or claims that were not actually decided").

18          In addition, the Ninth Circuit observed that "interlocutory orders and rulings made pre-trial by

19   a district judge are subject to modification by the district judge at any time prior to final judgment, and

20   may be modified to the same extent if the case is reassigned to another judge." *Amarel v. Connell*, 102

21   F.3d 1494, 1515 (9th Cir. 1996) (citing *In re United States*, 733 F.2d 10, 13 (2nd Cir. 1984) (citations

22   omitted)). The Court explained, "There is no imperative duty to follow the earlier ruling-only the

23   desirability that [parties] shall, so far as possible, have reliable guidance how to conduct their affairs."

24   *Id.* (internal quotation marks, citations omitted). For this reason, despite the prior order indicating the

25   parties should engage in discovery, the Court may address the sufficiency of the allegations related to

26   joint employment in the TAC.

27          **D.    Joint Employment**

28          Defendants may only be liable if they employed Plaintiffs and the putative class members.

1    *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010). Under California law, to employ "means: (a) to

2    exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or*

3    (c) to engage, thereby creating a common law employment relationship." *Martinez v. Combs*, 49 Cal.

4    4th 35, 76 (2010) (emphasis in original). Control over any one of these three aspects triggers

5    employer liability under California wage and hour law. *Id.* at 59; *see also Haralson v. United*

6    *Airlines, Inc*., 224 F. Supp. 3d 928, 938-44 (N.D. Cal. 2016) (rejecting the defendant's assertion that

7    something more than supervision is required, such as "hiring and firing power"). Thus, an individual

8    may be employed by multiple entities where one is responsible for hiring and paying, while another

9    entity supervises the work. *Martinez*, 49 Cal. 4th at 59.

10        Although Plaintiffs are not required to establish their joint employment at the pleading stage,

11    there must be allegations sufficient to support this conclusion. *See Smart v. US LBM, LLC*, 2025 WL

12    91178 (N.D. Cal. Jan. 13, 2025). Moreover, Plaintiffs are not able to hold Defendants liable for

13    violations of the California Labor Code by relying upon "principles of agency or joint and several

14    liability." *Noe v. Superior Ct.*, 237 Cal. App. 4th 316, 334 (2015); *see also Serrano v. Aerotek, Inc.,*

15    21 Cal. App. 5th 773, 784 (2018). For this reason, Plaintiffs must allege facts sufficient to support a

16    conclusion that *each* employer "violated the terms of the specific Labor Code provision at issue."

17    *Noe*, 237 Cal. App. 4th at 334.

18        Defendants argue the TAC must be dismissed because "Plaintiffs fail to allege facts sufficient

19    to show that [Castlerock and Good] were their direct or joint employer." (Doc. 175-1 at 14, emphasis

20    omitted.) Defendants contend, "each Plaintiff continues to baldly allege that he or she was either an

21    employee of Castlerock or a joint employee of Castlerock and FLC Padilla or Nuñez. (*Id.*, citing Doc.

22    173 ¶¶ 8-14.) Defendants observe that courts have required more specific allegations to support a

23    conclusion that the parties had an employment relationship. (*Id.* at 14-15, citing, *e.g.*, *Blair v. Classic*

24    *Party Rentals, Inc.*, 2021 WL 1120954, at *3 (E.D. Cal. Mar. 24, 2021); *Perez v. DNC Parks &*

25    *Resorts at Sequoia*, 2020 WL 4344911, at *5 (E.D. Cal. July 29, 2020); *Williams v. Nichols Demos,*

26    *Inc*., 2018 WL 11236757, at *3 (N.D. Cal. June 20, 2018).)

27        Plaintiffs dispute Defendants' arguments, and assert they "adequately allege Defendants were

28    direct or joint employers." (Doc. 180 at 9, emphasis omitted.)

1
2
3
4

Plaintiffs are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.  "Defendants" means each of the defendants as well as all of them.  Each Defendant is liable for having "caused," within the meaning of Labor Code §558 and 1197.1, the violations alleged in this complaint.  TAC ¶ 20.

5
6
7
8
9
10

Defendants are informed and believe, and based thereon allege, that Defendants Castlerock and Albert L. Good exercised control over wages, hours, or working conditions of employees obtained through FLCs, including but not limited to J.L. Padilla and Melba Nuñez, during the relevant time, either indirectly, directly, or through an agent or other person.  For example, Castlerock supervisors would instruct FLC employees that they worked for Castlerock and would instruct FLC forepersons and FLC employees how Castlerock expected the FLC employees to perform their job duties.  Castlerock supervisors also had the ability to lay off FLC employees and would instruct FLC forepersons which FLC employees to lay off.  TAC ¶ 21.

11
12

Plaintiffs are informed and believe, and based thereon alleged, that Defendants Castlerock and Albert L. Good had knowledge of and failed to prevent the Labor Code violations alleged herein.  TAC ¶ 22.

13    (Doc. 180 at 11, quoting Doc. 173, ¶¶ 20-22.)  Plaintiffs contend these allegations are sufficient at the

14    pleading stage to support "a joint employment relationship between Defendants."  (*Id.*)

15        Importantly, however, Plaintiffs' allegations do little more than restate a test for "employment"

16    under *Martinez* with the assertion that Good and Castlerock "exercised control over wages, hours, or

17    working conditions."  (*Compare* Doc. 173 at 9, ¶ 21 *with Martinez*, 49 Cal. 4th at 76.)  Although

18    Plaintiffs also contend "Castlerock supervisors would instruct FLC employees that they worked for

19    Castlerock and would instruct FLC forepersons and FLC employees how Castlerock expected the FLC

20    employees to perform their job duties," they do not allege any facts supporting a conclusion that

21    Castlerock—or Good—engaged in such actions related to *Plaintiffs'* employment at Castlerock.  Even

22    if there may have been a working relationship between Castlerock and the identified FLCs, as

23    Plaintiffs suggest, there are no allegations to support the conclusion that Good and Castlerock

24    "exercised control over wages, hours, or working conditions."  For example, Plaintiffs do not assert

25    that Castlerock or Good set the working schedules for Plaintiffs at Castlerock, set their pay rates

26    (whether hourly or piece rate), or directed when Plaintiffs could take meal and rest breaks.  Absent

27    such allegations, Plaintiffs fail to allege facts sufficient to hold Castlerock and Good liable as

28    employers for violations of the Labor Code provisions identified in the TAC.  *See Noe,* 237 Cal. App.

4th at 334; *see also Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) ("In general, a complaint which lump together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)." [cleaned up]).

### E.    First Cause of Action: AWPA

The Migrant and Seasonal Agricultural Worker Protection Act identifies requirements and regulations for employers of agricultural workers. *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153, 1166 (E.D. Cal. 2008). For example, employers—which can include farm labor contractors— are required to "at the place of employment, post in a conspicuous place a poster provided by the Secretary setting forth the rights and protections afforded such workers under [the] Act." 29 U.S.C. § 1831(b). In addition, employers are prohibited from violating, without justification, "the terms of any working arrangement made … with any seasonal agricultural worker." 29 U.S.C. § 1832(c); *D.M. Camp*, 624 F.Supp.2d at 1168. For purposes of the AWPA, the applicable statutes and regulations governing employment of agricultural workers are "not automatically encompass[ed]" into the "working arrangement." *D.M. Camp*, 624 F.Supp.2d at 1172. Rather, a "working arrangement" consists of "the terms of employment actually communicated between employer and employee." *Id.*

In the TAC, Plaintiffs seek to hold Defendants liable for "violating the terms of the working arrangement made with Plaintiffs in California, in violation of 29 U.S.C. § 1832(c)." (Doc. 173 at 17, ¶ 45(b).) Plaintiffs allege, "these working arrangements are contained in the IWC Wage Orders which are required to be and, actually are posted and communicated by Defendants to Plaintiffs as required by the IWC Wage Orders." (*Id.*) In addition, the TAC indicates:

> Plaintiffs allege that Defendants communicated the terms of employment with the Class by posting IWC Wage Orders on the job site which enumerated specific obligations of the employer with regard to working conditions required by state law, and in particular with regard to: the payment of minimum wages; payment of reporting time pay; piece-rate compensation; recording keeping requirements; provision of meal periods; provision of rest periods; and application of penalties. The Defendants also communicated a wage and piece rate to employees in a variety of ways including on wage statements. These wage and piece rates were not complied with due to the underpayments described in this complaint. These terms constituted the communicated working arrangement with these employees, which was systemically violated.

(*Id.* at 18, ¶ 46.)

1    Defendants contend that Plaintiffs' claim for a violation of AWPA fails because Plaintiffs do

2    not allege "working arrangements were actually communicated by Castlerock or Mr. Good to any

3    specific plaintiff." (Doc. 175-1 at 18.) The Court agrees.

4    To the extent Plaintiffs assert the "working arrangements" include the IWC Wage Orders,

5    when posted at the place of employment, the Wage Orders can become a part of the working

6    arrangement. *See Valenzuela v. Guimara Vineyards Corp.,* 614 F. Supp. 2d 1089, 1092-93 (E.D. Cal.

7    2009). However, Plaintiffs' allegations fall short of supporting a conclusion that the terms were

8    communicated *by Defendants to Plaintiffs*. As Defendants argue, even assuming the IWC Wage

9    Orders were posted at Castlerock, there are no allegations regarding which defendant posted the Wage

10   Orders or that the named plaintiffs saw the postings. In addition, there are no allegations that Good or

11   Castlerock furnished the wage statements to Plaintiffs, or otherwise communicated terms of their pay.

12   Without additional facts, Plaintiffs fail to allege either Castlerock or Good communicated "working

13   arrangements" to Plaintiffs, which were then violated.

14   **F.    Second Cause of Action: Failure to Pay Wages**

15   Plaintiffs seek to hold Defendants liable for "failure to pay minimum wage 'for all hours

16   worked'" and statutory wage penalties in violation of Cal. Lab. Code §§ 1197, 1194(a), & 1194.2.

17   (Doc. 173 at 19, ¶¶ 50-51; *see also id.* at 18-20, ¶¶ 48-57.) Under Section 1197, "[t]he minimum

18   wage for employees fixed by the commission is the minimum wage to be paid to employees, and the

19   payment of a lower wage than the minimum so fixed is unlawful." Cal. Lab. Code § 1197. If an

20   employer fails to pay its employees the minimum wage, Section 1194 provides that "any employee

21   receiving less than the legal minimum wage … is entitled to recover in a civil action the unpaid

22   balance of the full amount of this minimum wage." Cal. Lab. Code § 1194. If Plaintiffs and other

23   class members were not paid minimum wages, then they are entitled to payment of the full amount of

24   the unpaid minimum wage. *Id.*

25   In the TAC, Plaintiffs allege that "Defendants failed to pay wages through the intentional

26   enforcement of the following policies" at Castlerock:

27        (a) requiring employees to work "off the clock" by, for example,
          arriving early for set up, attending training and other meetings;

28

16

(b) requiring employees to work at hourly wage or piece rates below minimum wage;

(c) requiring employees to report to work and when the employee does report for work, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, paying the employee less than half the usual or scheduled day's work at the employee's regular rate of pay or less than the legal minimum;

(d) requiring employees to work split shifts without paying employees one hour's pay at the minimum wage for each workday they work a split shift;

(e) requiring employees to work without being provided a minimum ten (10) - minute rest period for every four (4) hours or major fraction thereof worked and not being compensated one (1) hour of pay at the employee's regular rate of compensation for each workday that a rest period was not provided;

(f) requiring employees to work in excess of five (5) hours per day without being provided a meal period and not being compensated one (1) hour of pay at the regular rate (or minimum wage) of compensation for each workday that a meal period was not provided; piece rate;

(g) requiring or permitting employees to perform unpaid work while earning piece rate;

(h) failing to pay all wages due at the employee's voluntary or involuntary termination.

(Doc. 173 at 18-19, ¶ 49.) They allege, "Plaintiffs and the class were forced or permitted to work 'off the clock' time without compensation before and after shifts and during meal periods, and required or permitted to perform unpaid work while earning piece rate." (*Id.*, ¶ 50.) Plaintiffs contend, "Defendants willfully violated the provisions of the Labor Code, other California laws, and IWC Wage Orders." (*Id.*, ¶ 49.)

Defendants assert these allegations to support the claim are conclusory and insufficient. (Doc. 175-1 at 16.) For example, Defendants note that Plaintiffs allege that "'Defendants' failed to record and compensate Plaintiffs for off-the-clock work," without identifying which of the defendants failed to track their hours. (*Id.* at 17.) On the other hand, Plaintiffs contend they "state a claim for failure to pay minimum wage." (Doc. 180 at 13, emphasis omitted]; *see also id.* at 14-15.)

The Ninth Circuit addressed, for the first time, "the degree of specificity required to state a claim for failure to pay minimum wages or overtime wages" following the Supreme Court's decisions in *Twombly* and *Iqbal*. *Landers v. Quality Commns., Inc..*, 771 F.3d 638, 640 (9th Cir. 2015). The

1  Court noted: "Pre-*Twombly* and *Iqbal*, a complaint … for minimum wages or overtime wages merely

2  had to allege that the employer failed to pay the employee minimum wages or overtime wages." *Id.*,

3  771 F.3d at 641.  However, the Ninth Circuit observed that with *Twombly* and *Iqbal*, the Supreme

4  Court clarified plaintiffs must allege facts sufficient to "state[] a plausible claim for relief."  *Landers*,

5  771 F.3d at 641.  Therefore, the Ninth Circuit determined in *Landers* that "in order to survive a motion

6  to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than

7  forty hours in a given workweek without being compensated for the overtime hours worked during

8  that workweek." *Id.* at 644-45, citing *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012), *Lundy*

9  *v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *Davis v. Abington*

10  *Memorial Hospital*, 765 F.3d 236, 242-43 (3d Cir. 2014).  The Court explained:

11

12  > [T]he plausibility of a claim is "context-specific."  *Lundy*, 711 F.3d at
> 114.  A plaintiff may establish a plausible claim by estimating the
> length of her average workweek during the applicable period and the
13  > average rate at which she was paid, the amount of overtime wages she
> believes she is owed, or any other facts that will permit the court to find
14  > plausibility. *See Pruell*, 678 F.3d at 14.  Obviously, with the pleading of
> more specific facts, the closer the complaint moves toward plausibility.
> However, like the other circuit courts that have ruled before us, we
15  > decline to make the approximation of overtime hours the *sine qua non*
> of plausibility for claims brought under the FLSA.

16

17  *Landers*, 771 F.3d at 645.  Thus, generalized allegations violations will not suffice.  *Id.* at 645-66.

18          Having determined the applicable standards following *Twombly* and *Iqbal*, the Ninth Circuit

19  evaluated whether Landers alleged facts sufficient to support his claims.  Landers alleged his employer

20  "implemented a '*de facto* piecework no overtime' system and/or failed to pay … overtime wages for

21  the hours worked by Landers," which resulted in "the plaintiffs not being paid time and one-half their

22  'regular hourly rate' for work in excess of 40 hours a week."  *Landers*, 771 F.3d at 645-46.  Further,

23  Landers asserted "the named plaintiff … worked more than 40 hours per week for the defendants, and

24  the defendants willfully failed to make said overtime and/or minimum wage payments."  *Id.* at 646.

25  The Ninth Circuit determined these allegations were insufficient, observing: "Notably absent from the

26  allegations in Landers's complaint … was any detail regarding a given workweek when Landers

27  worked in excess of forty hours and was not paid overtime for that given workweek and/or was not

28  paid minimum wages."  *Id.*  The Court explained that although plaintiffs "cannot be expected to allege

'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* (citation omitted).  Therefore, the Court concluded Landers failed to allege facts sufficient to support a claim.  *Id.*

Importantly, though *Landers* addressed FLSA claims, district courts determined the pleading standards identified extends to claims under the California Labor Code.  *See*, *e.g.*, *Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1103, 1122 (E.D. Cal. 2022) (observing the pleading standard in *Landers* applies to both FLSA and state labor code claims); *Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044 (S.D. Cal. 2016) ("[t]he pleading standards set forth in *Landers* apply equally" to a plaintiff's claims for minimum wage violations under state law); *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016) ("Although *Landers* discussed FLSA claims, its reasoning applies to California Labor Code claims as well"); *Krauss v. Wal-Mart*, Inc., 2019 WL 6170770 at *3 (E.D. Cal. Nov. 19, 2019) (finding the plaintiff failed to allege facts sufficient to support a claim for minimum wage violations under California law with "generalized allegations" and she did not allege facts sufficient to conclude she was paid less than minimum wage during any given week).  Consequently, Plaintiffs are required to do more than present conclusory statements that they, and class members, were paid less than minimum wage in violation of California law.  This burden may be met with allegations addressing the wages paid and the amount of off-the-clock work required.  *See*, *e.g.*, *Hines v. Constellis Integrated Risk Mgt.*, 2021 WL 4432833 (C.D. Cal. Aug. 24, 2021); *Dawson v. One Call Med.*, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021).

Plaintiffs observe this Court addressed the sufficiency of the pleadings following *Landers* standard in *Boone v. Amazon.com Servs, LLC*, 562 F. Supp. 3d 1103 (E.D. Cal. 2022).  Plaintiffs note that in *Boone*,  "the plaintiffs survived the defendant's motion to dismiss without pleading a specific workweek because the plaintiffs had provided allegations addressing their start and end dates of employment, their hourly rates of pay, and their work schedule."  (Doc. 180 at 14, citing *Boone*, 562 F. Supp. 3d at 1123.)  Plaintiffs acknowledge that in *Boone* the allegations were sufficient to support a minimum wage claim because the Court could "infer a violation occurred in at least one workweek."  (*Id.*)  According to Plaintiffs, the pleadings in this case are similar to *Boone*.  Plaintiffs

1    contend, "Each Plaintiff has alleged their employer, their start and end dates of their employment, the

2    type of work performed, their rate of pay, and work schedules." (*Id.* at 14-15, citing TAC ¶¶ 8-14

3    [Doc. 173 at 3-6].) However, Plaintiffs' assertions are not supported by the pleadings.

4         Review of Paragraphs 8 through 14 in the TAC shows Plaintiffs allege little information about

5    their employment. Plaintiffs do not specify their start or end dates, but instead make broad statements

6    regarding their periods of employment. For example, Maria Moreno asserts that she worked at

7    Castlerock "at various times during the Class Period through 2010, punctuated by seasonal and other

8    types of lay-offs." (Doc. 173 at 3, ¶ 8.) Similarly, Israel Lopez asserts that he worked at Castlerock

9    "at various times during the Class Period through February 2011, punctuated by seasonal and other

10   types of lay-offs." (*Id.* at 4, ¶ 11.) The allegations regarding Ofelina Pena are even more vague, as

11   Plaintiffs simply assert that she worked at Castlerock "at various times during the Class Period." (*Id.*

12   at 6, ¶ 13.) The lack of specific information renders it difficult for the Court to determine the

13   applicable minimum wages for each plaintiff, and whether their pay fell below the required minimum.

14        In addition, Plaintiffs do not provide any specific information regarding their rates of pay.

15   Israel Lopez, Marcela Lopez, Ofelina Pena, and Elvis Perez assert they worked "at agreed-upon piece

16   rates," without identifying the rates received or the terms of the piece rate pay. (Doc. 173 at 4-5, ¶¶

17   11-14.) The payment for Maria Moreno, Esther Lopez, and Francisco Orozco is even less clear, as

18   these plaintiffs assert that they worked "at agreed-upon hourly and/or piece wage rates that varied"

19   over the course of their employment. (*Id.* at 3-4, ¶¶ 7-9.) There is no information regarding the

20   specific terms of any piece rate employment—such as whether the plaintiffs received a *pure* piece-

21   rate pay or whether it was mixed with a base pay—or the specific rates paid.

22        More significantly, the TAC does not include any allegations regarding Plaintiffs' "work

23   schedules." (*See generally* Doc. 173.) For example, in *Boone* the Court observed: "Plaintiff Boone

24   alleged that she worked four days a week for 10 hours each day, from 7:45 a.m. to 5:45 p.m., and

25   plaintiff Rivera has alleged that she worked from 6:00 p.m. to 5:00 a.m. on four consecutive days,

26   followed by three days off." *Id.*, 562 F. Supp. 3d at 1103. With this information, the Court was able

27   to determine the plaintiffs "each worked 40 hours a workweek," excluding the off-the-clock

28   screening time. *Id.* Here, however, Plaintiffs do not provide any information regarding their work

20

hours, such that the Court may review the hours worked and the compensation received to find the allegations sufficient to support a conclusion that Plaintiffs did not receive minimum wage.

Finally, Plaintiffs allege "Defendants failed to … compensate Plaintiffs and Class member employees at least minimum wage for pre-shift and post-shift 'off the clock' time." (Doc. 173 at 11, ¶ 25(d); *see also id.* at 17, ¶ 45(c) [indicating Defendants violated employee rights by "failing to pay wages when due for unpaid off-the-clock time"].)  Plaintiffs also assert, "Defendants failed to pay wages through the intentional enforcement of the following policies: (a) requiring employees to work "off the clock" by, for example, arriving early for set up, attending training and other meetings; [and] (b) requiring employees to work at hourly wage or piece rates below minimum wage…". (*Id.* at 18, ¶ 49.)  However, Plaintiffs do not identify who directed their attendance—such that the Court may find Castlerock, Good, Padilla, and/or Nuñez is liable for this Labor Code violation.  *See Noe*, 237 Cal. App. 4th at 334.  None of the named plaintiffs assert *they* were required to arrive early, attended any training sessions, or attended meetings.  There also are no estimates regarding the time spent on the alleged off-the-clock tasks, or how frequently, such that the Court may determine whether the plaintiffs were paid less than the minimum wage.  *Compare with Benge v. Office Depot, LLC*, 2025 WL 1580847, at *4-5 (E.D. Cal. June 3, 2025) (finding the allegations sufficient to support a claim for violation of minimum wage pay where the plaintiff alleged his work schedule, estimated that he spent about 5-10 minutes per day off the clock, and identified the specific tasks).

Given the dearth of factual allegations related to the pay received, schedules worked, and any off-the-clock work performed, the Court is unable to find the allegations are sufficient to support a conclusion that Plaintiffs—or class members—were paid less than the minimum wage in violation of California law.  *Boyack v. Regis Corp.,* 812 Fed. App'x 428, 430-31 (9th Cir. 2020) (affirming dismissal where the plaintiff failed to include factual allegations supporting a conclusion that she "received less than minimum wages for all hours worked," where the plaintiff alleged that "she was paid 'purely on commissions and tips'"); *see also Edwards v. Costco Wholesale Corp.,* 2021 WL 3130043, at *5 (C.D. Cal. July 23, 2021) (dismissing a minimum wage claim under California law because the allegations included "no context regarding how many minutes or hours Plaintiff allegedly

1   worked off the clock, or how often it allegedly happened").  Consequently, Defendants' motion to

2   dismiss the second cause of action related to minimum wages is granted.

3          **G.     Third Cause of Action: Reporting Time Wages**

4          Plaintiffs allege the "Defendants failed to pay reporting time wages," in violation of

5   California Labor Code §§ 1197, 1194(a), 1194.2, [and] IWC Wage Orders."  (Doc. 173 at 20, *id.* at

6   21, ¶ 59.)  Plaintiffs observe that under the applicable Wage Orders, reporting time wages are

7   required as follows:

8                  (A) Each workday an employee is required to report for work and does
                   report, but is not put to work or is furnished less than half said
9                  employee's usual or scheduled days work, the employee shall be paid
                   for half the usual or scheduled day's work, but in no event for less than
10                 two hours nor more than four hours, at the employee's regular rate of
                   pay, which shall not be less than the minimum wage.

11
                   (B) If an employee is required to report for work a second time in any
12                 one workday and is furnished less than two hours of work on the
                   second reporting, said employee shall be paid for two hours at the
13                 employee's regular rate of pay, which shall not be less than the
                   minimum wage.
14

15  (*Id.* at 21, ¶ 61) (quoting Wage Orders 8-2001(5)(A) and (B), 13-2001(5)(A) and (B), and 14-

16  2001(5)(A) and (B).)  According to Plaintiffs, "[t]hey and the class members were forced to comply

17  with work schedules that required them to report to work and were furnished with less than half said

18  employees' usual or scheduled day's work."  (*Id.*, ¶ 59.)  Based upon this Paragraph, Plaintiffs contend

19  they state a claim for reporting time violations.  (Doc. 180 at 15, citing TAC ¶ 19.)

20         Under California law, "[e]mployees have a private right of action to recover any unpaid wages

21  including reporting time pay."  *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1075 n.6 (9th Cir. 2020)

22  (citations omitted).  To state a cognizable claim for reporting time violations, Plaintiffs must allege:

23  "(1) they were required to report for work by their employer, (2) plaintiff did report to work, and (3)

24  plaintiff was not put to work."  *Picou v. Tracy Logistics LLC*, 2025 WL 1248729, at *9 (E.D. Cal. Apr.

25  29, 2025) (citing *Dimercurio v. Equilon Enters. LLC*, 2020 WL 227262, at *3 (N.D. Cal. Jan. 15,

26  2020)); *see also* Cal. Code Regs., tit. 8, § 11010 subd. 5.

27         In *Picou*, this Court addressed the sufficiency of allegations to support a reporting time wages

28  claim and observed that a plaintiff must do more than allege employees were subject to a policy that

required them to show up without being paid proper wages.  *Id.*, 2025 WL 1248729, at *9-10.  The Court observed: "[Picou] alleges he is 'informed and believes' that all or substantially all of Defendant's hourly paid employees were subject to Defendant's policies and practices requiring them to call in or otherwise show up to work but were not being paid half of their 'usual or scheduled day's work.'"  *Id.* *at 9.  However, the Court found the operative complaint was "devoid of any facts describing the circumstances, occurrences, and events showing that Plaintiff and proposed class members were subject to any policy or practice requiring them to … show up to work without pay."  *Id.* at *10.  Thus, the Court granted a motion to dismiss Picou's reporting time pay claim.  *Id.*

Similarly, the Central District found allegations insufficient to support a claim for reporting time wages in *Lopez v. Wendy's International, Inc.*, 2011 WL 13224822, at *10 (C.D. Cal. May 17, 2011).  As here, Lopez alleged the defendant "failed to pay reporting time wages, under California Labor Code §§ 1194(a), 1194.2, and 1197."  *Id.*  The court observed Lopez alleged: "Plaintiff and Class Members were forced to comply with a work schedule that required them to report to work for shifts of less than two hours on certain workdays that were established by Defendant under an hourly quota system."  *Id.*  The court found Lopez failed to state "a coherent factual basis for her claim," and granted the defendant's motion to dismiss the cause of action.  *Id.*

The TAC suffers deficiencies similar to those identified in *Picou* and *Lopez*.  As discussed above, Plaintiffs do not allege any information regarding their work schedules, such that the Court may find they worked any split shifts.  Plaintiffs also do not specify any instance when they were required to report to work at Castlerock, identify who directed Plaintiffs to report to work, or assert they were not paid after reporting and not being put to work.  Ultimately, Plaintiffs do little more than recast the requirements of the identified Wage Orders as allegations, which is insufficient to support their claim for reporting time wages.  *See Picou*, 2025 WL 1248729 at *9-10; *Lopez*, 2011 WL 13224822.  Therefore, Defendants' motion to dismiss the third cause of action is granted.

## H.    Fourth Cause of Action: Meal Periods

Plaintiffs seek to hold Defendants liable for failure to provide meal periods pursuant to Cal. Lab. Code § 226.7 and Wage Order 8.  (Doc. 173 at 22-23.)  California law requires employers to provide non-exempt employees with an uninterrupted meal period of at least thirty minutes for each

work period of five hours, and two meal periods for each period of ten hours. *See* Cal. Lab. Code § 512; 8 Cal. Code Regs. § 11080(11). Wage Order 8 explains: "Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." 8 Cal. Code Regs. § 11080(11)(C). "[E]mployers fulfill their obligation to provide meal periods to their employees when they relieve their employees of all duty, relinquish control over their activities and permit them a reasonable opportunity to take an uninterrupted 30-minute break, and do not impede or discourage them from doing so." *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 956 (9th Cir. 2018) (internal quotation marks, citation omitted). For each workday an employer fails to provide such meal periods, the employer must pay "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal [period] … is not provided." Cal. Lab. Code § 226.7.

Plaintiffs argue that "the facts alleged are sufficient to state a meal … break claim." (Doc. 180 at 15.) Plaintiffs assert the TAC includes allegations that "they and other class members were required to work five hours or more without a timely, thirty-minute, uninterrupted meal period, and that they were not compensated for missed or non-compliant meal … periods." (*Id.* at 12, citing TAC ¶¶ 68-87 [Doc. 173 at 22-23].) According to Plaintiffs, they also alleged the "Plaintiffs experienced specific instances where meal … break violations occurred during the relevant time period." (*Id.* at 15, citing TAC ¶¶ 16-22, 25, 30, 37, 68-87 [Doc. 173 at 6-13, 22-26].) Defendants argue this is false, and the meal break allegations are insufficient to state a claim. (Doc. 181 at 7.)

Significantly, as Defendants assert, "[t]o successfully state a meal … break claim, plaintiffs must allege facts specifically identifying an instance where they were deprived" of the meal break. *Perez v. DNC Parks & Resorts at Sequoia*, 2020 WL 4344911 at *8 (E.D. Cal. July 29, 2020) (citing *Landers*, 771 F.3d at 646); *see also Guerrero v. Halliburton Energy Servs., Inc.*, 2016 WL 6494296, at *6 (E.D. Cal. Nov. 2, 2016) (collecting district court cases applying *Landers* standard to meal and rest period claims under the California Labor Code). Thus, even allegations that an employer had a policy depriving the employees of meal breaks and the plaintiffs were deprived of breaks—without more— are insufficient. *See, e.g., Edwards,* 2021 WL 3130043, at *4-5; *Reyes v. Five Diamond Cold Storage, Inc.*, 2024 WL 3011123, at *5 (E.D. Cal. June 11, 2024).

24

For example, in *Edwards*, the plaintiff sought to represent a class and hold the defendant liable for provide meal breaks in violation of California labor laws. *Id.*, 2021 WL 3130043 at *4-5. In the initial complaint, Edwards asserted that "workers were required to work through meal breaks; that Defendant][] did not provide the required meal breaks; and that Defendant 'suffered and permitted' Plaintiff and other employees to work through their meal breaks." *Id.* The Central District found the allegations were insufficient because Edwards "did not identify any unprovided meal … breaks." *Id.* In the FAC, Edwards added allegations that "meal periods were shortened, taken late, and/or were interrupted" due to activities such as "waiting in line to clock in and out… and answering work related questions from supervisors and coworkers" during the meal period. *Id.* In addition, Edwards asserted that the defendants failed to relieve him and the other class members "and impeded or discouraged them" from taking meal periods within the proper time. *Id.* at *5. Despite the additional allegations, the court found Edwards "failed to sufficiently plead" a meal period claim, because "the FAC [did] not identify any specific instance in which [Edwards] was denied a meal period." *Id.*

Likewise, this Court determined in *Reyes* that the plaintiff failed to support her claim for meal period violations based on an alleged policy she and the class "were not afforded timely period periods as required by California law, since they were routinely required to work five hours or more without a timely, thirty minute, uninterrupted meal period, and they were not compensated for missed meal periods." *Id.*, 2024 WL 3011123, at *5. Reyes also asserted that "she and the class did not voluntarily or willfully waive meal periods." *Id.* The Court found the allegation that Reyes "was routinely deprived of meal breaks states a *possibility* that Defendants violated section 226.7, but, without any supporting factual allegations," Reyes failed to "*plausibly* state[] a claim for a meal break violation." *Id.* (emphasis in original).

Plaintiffs' allegations suffer deficiencies similar to those identified in *Edwards* and *Reyes*. In the TAC, Plaintiffs allege that "Defendants did not relieve employees of all duty for meal periods, did not provide timely meal periods, and discouraged employees from taking meal periods, in violation of the meal break laws." (Doc. 173 at 22, ¶ 69; *see also id.* at 23, ¶ 73.) However, Plaintiffs do not identify who directed them to remain on duty, or what tasks they were required to perform while remaining on duty. Although Plaintiffs assert that "Defendants enforce production requirements, piece

rate policies, and other practices that discouraged … meal breaks" (*id.*, ¶ 74), they do not allege facts supporting a conclusion that *Plaintiffs* were discouraged from taking meal breaks, and in fact missed meal breaks as a result.  Given the lack of information regarding their work schedules, Plaintiffs also do not allege working any shift that was long enough to trigger the meal period requirements.  As alleged, the facts as alleged are not sufficient to state a plausible claim that Plaintiffs or Class Members suffered rest break violations.  *See Reyes*, 2024 WL 3011123, at *5; *Edwards,* 2021 WL 3130043, at *4-5; *see also Chavez v. RSCR Cal., Inc.,* 2019 WL 1367812, at *2 (E.D. Cal. Mar. 26, 2019) ("failure to plead at least one occasion on which [the plaintiff] was impeded from taking a meal or rest break likely runs afoul of the Ninth Circuit's decision in *Landers*").  Accordingly, Defendants' motion to dismiss the meal period claim is granted.

## I.        Fifth Cause of Action: Rest Periods

California law requires "employers to afford their nonexempt employees … rest periods during the workday."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018 (2012).  Pursuant to Cal. Labor Code § 226.7(b), "No employer shall require any employee to work during any … rest period mandated by an applicable order of the Industrial Welfare Commission...." In relevant part, Wage Order 8 provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

8 Cal. Code Regs. § 11080(12)(A).  If an employer fails to comply with these provisions, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Cal. Labor Code § 226.7(c).  Thus, if an "employers forces [an] the employee to miss a required rest break or does not provide the employee with a required rest break, then the employee is entitled to be paid immediately for the missed rest break."  *Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 334 F.R.D. 234, 257 (E.D. Cal. Nov. 5, 2019) (addressing an identical rest period provision in Wage Order 14).

1    Given the lack of factual allegations identifying any week in which Plaintiffs suffered a rest

2    period violation—including the work schedule of Plaintiffs, to support a conclusion that they were

3    even entitled to rest periods— this claim suffers the same deficiencies as the meal period claim, and

4    similarly fails. *See, e.g., Perez*, 2020 WL 4344911, at * 8 ("To successfully state a …rest break claim,

5    plaintiffs must allege facts specifically identifying an instance where they were deprived of a … rest

6    break"); *see also Guerrero*, 2016 WL 6494296 at *6 ("The requirement in *Landers* that a plaintiff

7    must plead a specific instance of alleged wage and hour violations also applies to claims about missed

8    … rest periods").  Consequently, the claim for rest period violations is also dismissed.

9    **J.    Sixth Cause of Action: Wages at Termination**

10    Plaintiffs seek to hold Defendants liable for failure to "pay wages due at termination" pursuant

11    to California Labor Code Sections 201 and 202, which set deadlines for paying employees unpaid

12    wages.  (Doc. 173 at 26, emphasis omitted.)  Plaintiffs allege:

13    
14    > Defendants failed to timely pay Plaintiffs and the Class they seek to
> represent all of their wages due for work performed and this failure
> continued through the time in which Plaintiffs and Class Members quit or
15    > were discharged from their employment with Defendants.  As a result,
> Defendants have violated California Labor Codes §§ 201 and 202.

16    (*Id.*, ¶ 91.)  Plaintiffs also contend that "Defendants willfully failed to pay all wages due as the failure

17    to pay was not inadvertent or accidental."  (*Id.* at 27, ¶ 93.)  Thus, Plaintiffs contend they are entitled

18    to penalties under Section 203.

19    Defendants contend this cause of action fails because Plaintiffs do not allege "whether each

20    plaintiff was discharged under Labor Code section 201, or whether he or she quit pursuant to Labor

21    Code section 202, instead pleading alternatively under each statute."  (Doc. 175-1 at 19.)  In

22    response, Plaintiffs contend that Defendants cannot "require Plaintiffs to include every date they were

23    fired or quit," because "[s]uch requirement is beyond the pleading requirements in a case that

24    involves migrant farmworkers who engaged in seasonal work that spans several years."  (Doc. 180 at

25    15.)  Plaintiffs assert that they "alleged their employment dates and that their work was punctuated by

26    seasonal and other types of layoffs," and "[t]hat is enough at this stage."  (*Id.* at 16, citing TAC ¶¶ 8-

27    14 [Doc. 173 at 3-6].)

28

### 1.     Claim under Section 202

Section 202 states "[i]f an employee ... *quits* his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter..." Cal. Lab. Code § 202 (emphasis added) However, as noted, each plaintiff alleges that his or her employment at Castlerock was "punctuated by seasonal and other types of lay-offs."  (Doc. 173 at 3-6, ¶¶ 8-14.)  None of the Plaintiffs alleged they *quit* their employment at Castlerock.

Importantly, a plaintiff who was terminated is not able to state a claim for relief under Section 202, because a "plaintiff could not have both resigned and been terminated at the same time."  *Perez,* 2020 WL 4344911 *8; *see also Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1394 (2010) (explaining Section 202 applies only "to employees who quit").  Thus, it appears the named plaintiffs lack standing to state a claim for wages due, to the extent the claim is based upon Section 202.

### 2.     Claim under Section 201

Section 201 provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201.  Plaintiffs do not clearly all they were "discharged," but rather had "seasonal lay-offs" from their employment at Castlerock.  (Doc. 173 at 3-6, ¶¶ 8-14.)

The Ninth Circuit observed that "Section 201 does not define discharge." *Harstein v. Hyatt Corp.*, 82 F.4th 835, 830 (9th Cir. 2023).  The Court did not find caselaw that addressed this question. *Id.* However, the Court observed that "the California Division of Labor Standards Enforcement ('DLSE') has answered the question explicitly" in an opinion letter stating: "if an employee is laid off without a specific return date within the normal pay period, the wages earned to and including the lay off date are due and payable in accordance with Section 201." *Id.* (emphasis omitted). The Court reviewed the DLSE opinion letter, as well as its Policies and Interpretations Manual, and found "temporary layoffs without a specific return date within the normal pay period is a discharge that triggers the prompt payments provision of § 201." *Id.* at 835.

Notably, Section 201 addresses "seasonal employment" for some individuals, stating:

> An employer who lays off a group of employees by reason of the
> termination of seasonal employment in the curing, canning, or drying of
> any variety of perishable fruit, fish, or vegetables, shall be deemed to
> have made immediate payment when the wages of said employees are

1
2

> paid within a reasonable time as necessary for computation and payment
> thereof; provided, however, that the reasonable time shall not exceed 72
> hours, and further provided that payment shall be made by mail to any
> employee who so requests and designates a mailing address therefor.

3
4
5
6

Cal. Lab. Code § 201(a).  Although it is unclear whether the work at Castlerock included the described work, Section 201 nevertheless identifies "termination of seasonable employment" as a discharge for some industries.

7
8
9
10
11
12

Based upon the Court's analysis in *Harstein* and the "seasonal employment" provision in Section 201, it appears that Plaintiffs' alleged "seasonal lay-offs" from work at Castlerock constitute "discharges" under Section 201.  *See Harstein v. Hyatt Corp.*, 82 F.4th at 830; *see also Valenzuela v. Guimarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1102 (E.D. Cal. 2009) (finding "allegations of discharge from seasonal agricultural work states a claim under California's waiting time penalty laws" under Section 201).  This interpretation of the pleadings also is consistent with the lack of specific allegations that any named plaintiff quit his or her work at Castlerock.

13
14
15
16
17
18
19
20
21
22
23
24
25

Importantly, however, this claim is derivative of the other alleged labor code violations, because Plaintiffs incorporate the prior allegations and contend "Defendants failed to timely pay … all of their wages due for work performed."  (Doc. 173 at 26, ¶ 91.)  As discussed above, Plaintiffs did not allege facts sufficient to state plausible claims for the Labor Code violations alleged.  Consequently, the other claims—for unpaid wages, reporting time wages, and meal and rest break violations—cannot support Plaintiffs' claim under Section 201.  *See*, *e.g., Benge*, 2024 WL 379403, at *4 (finding a claim for violations of Section 201 failed where "the Court concluded that Plaintiff failed to allege a plausible Labor Code violation"); *Hines*, 2021 WL 4432833, at *7 (the plaintiff failed to state a claim for wages due on termination where he did not sufficiently plead overtime or minimum wage claims); *Sherman*, 2019 WL 3220585, at *6 (finding a claim for wages due failed where it was "wholly derivative" of meal and rest break violations that the plaintiff failed to support with sufficient factual allegations).  To the extent this cause of action is based upon a violation of Section 201, dismissal is likewise appropriate.

26

### 3.     Penalties under Section 203

27
28

Plaintiffs seek penalties under Cal. Lab. Code § 203 for the failure to comply with the deadlines identified in Sections 201 and 202.  (Doc. 173 at 27, ¶ 94.)  Where an employer willfully

1  fails to comply with Sections 201 and 202 upon an employee's separation, "the wages of the

2  employee shall continue as a penalty from the due date thereof at the same rate until paid or until an

3  action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor

4  Code § 203(a).  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs

5  when an employer intentionally fails to pay wages to an employee when those wages are due." 8 Cal.

6  Admin. Code § 13520; *see also Barnhill v. Robert Saunders & Co*., 125 Cal.App.3d 1, 7-8 (1981)

7  ("[A]n employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen

8  of wages which the employer knows to be due. As used in section 203, 'willful' merely means that

9  the employer intentionally failed or refused to perform an action which was required to be done").

10     Because Plaintiffs failed to allege sufficient facts to support a claim for a violation of Section

11  201—and appear to lack standing under Section 202—Plaintiffs also fail to support their claim for

12  waiting time penalties under Section 203.  Accordingly, Defendants' request for dismissal of the sixth

13  cause of action is granted.

14     **K.    Seventh Cause of Action: Itemized Wage Statements**

15          1.    Wage statements

16     Each employer must furnish employees with an "accurate itemized wage statement in writing"

17  with information such as gross wages earned, total hours worked by an employee, the number of hours

18  worked at each hourly rate, all deductions, net wages earned, and identifying information of the

19  employee and the employer.  Cal. Lab. Code § 226(a).  Under Section 226, if an employer provides an

20  inaccurate or incomplete wage statement, employees may be entitled to recover actual damages or $50

21  for the initial pay period in which a violation occurs and $100 "for each violation in a subsequent pay

22  period," not to exceed $4,000.  Cal. Lab. Code § 226(e)(1).

23     Plaintiffs seek to hold Defendants liable for "knowing and intentional failure to comply with

24  itemized employee wage statement provisions." (Doc. 173 at 27-28, emphasis omitted].)  Plaintiffs

25  contend they allege sufficient facts to support a claim, asserting:

26          Plaintiffs Defendants failed to provide Plaintiffs and the class accurate
               itemized wage statements that include the gross wages earned, total
27          hours worked, piece-rates if any, rest and recovery periods and other
               nonproductive time separate from any piece-rate compensation, all
28          deductions, net wages earned, pay period dates, name of employee,

30

1    name address of the legal entity that is the employer, and all applicable
     hourly rates in effect during the pay period.

2    (Doc. 180 at 18, citing TAC ¶¶ 97-103.)  However, Plaintiffs neither allege which defendant

3    furnished their wage statements, nor that *they* received wage statements that failed to include their

4    name, the employer, or other required information.  To the extent Plaintiffs' claim is derivative of

5    their other causes of action under the Labor Code (*id.*, ¶¶ 97-99), this cause of action lacks sufficient

6    factual support as well.

7                    2.        Record keeping

8            As part of the seventh cause of action, Plaintiffs contend "Defendants have created a uniform

9    practice of knowingly and intentionally failing to comply with Labor Code § 1174."  (Doc. 173 at 28-

10   29, ¶ 101.)  Plaintiffs contend they are entitled to compensation for "the failure to keep adequate time

11   records required by… [Section] 1174 (d) of the Labor Code."  (*Id.* at 19, ¶ 102.)

12           Section 1174(d) identifies duties for "every person employing labor in California."  *Cleveland*

13   *v. Groceryworks.com*, *LLC*, 200 F. Supp. 3d 924, 958 (N.D. Cal. 2016).  In relevant part, Section

14   1174(d) requires employers to "keep . . . payroll records showing the hours worked daily by and the

15   wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to,

16   employees employed at the respective plants or establishments." Cal. Lab. Code § 1174(d).  The

17   records shall be kept … for not less than three years." *Id.*

18           Significantly, district courts reviewing the provision have repeatedly determined that "there is

19   no private right of action for violation of Section 1174(d)."  *Picou v. Tracy Logistics LLC*, 2025 WL

20   1248729, at *12 (E.D. Cal. Apr. 29, 2025); *see also Cleveland*, 200 F. Supp. 3d at 958-59 (finding

21   correct the defendant's argument that "California Labor Code section 1174 does not contemplate a

22   private right of action"); *Graves v. DJO, LLC*, 2023 WL 356507, at *13 (S.D. Cal. Mar. 30, 2023)

23   ("there is no private right of action for violation of section 1174(d)"); *Dawson v. HITCO Carbon*

24   *Composites, Inc.,* 2017 WL 7806618, at *7 (C.D. Cal. Jan. 20, 2017) ("Plaintiff's § 1174(d) claim

25   fails as a matter of law because it does not provide for a private cause of action").  Accordingly, to

26   the extent Plaintiffs attempt to base their seventh cause of action upon a violation of Section 1174(d),

27   Plaintiffs are unable to do so.

28

                                              31

1

**L.      Eighth Cause of Action: California's Unfair Competition Law**

2      Plaintiffs' final claim in the TAC is for a violation of California's Unfair Competition Law, as

3  set forth in Cal. Bus. & Prof. Code § 17200, *et seq*. (Doc. 173 at 29-32.)  Under Section 17200, unfair

4  competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof.

5  Code § 17200.  Therefore, there are three prongs under which a claim may be established under

6  Section 17200.  *Daro v. Superior Ct*, 151 Cal.App.4th 1079, 1093 (2007) ("a business act or practice

7  need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair

8  competition"); *see also Lozano v. AT&T Wireless Servs*., 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach

9  prong … is a separate and distinct theory of liability").  Given the disjunctive nature of the prongs, an

10 action may be unfair even if it is not unlawful.  *Cel-Tech Communications., Inc. v. Los Angeles*

11 *Cellular Telephone Co*., 20 Cal.4th 163, 181 (1999).  Opposing dismissal, Plaintiffs maintain they

12 adequately allege UCL violations.  (Doc. 180 at 11, 18.)

13      1.      Unfair practices

14      What constitutes "unfair" practices under the UCL is unsettled.  *See, e.g., Doe v. CVS Pharm.,*

15 *Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (identifying various tests established to evaluate the

16 prong); *see also Obertman v. Electrolux Home Care Prods.*, 482 F. Supp 3d 1017, 1027 (E.D. Cal.

17 2020) ("[t]here is some confusion in the law over the applicable test for 'unfair' conduct"); *NJOY,*

18 *LLC v. Imiracle (HK) Ltd.*, 760 F. Supp. 3d, 1084, 1115 (S.D. Cal. 2024) ("the proper definition of

19 unfair conduct … is currently in flux among California courts" [cleaned up, citation omitted]).  The

20 Ninth Circuit observed there are currently three tests for unfair practices:

21          [C]ourts consider either: (1) whether the challenged conduct is
           "tethered to any underlying constitutional, statutory or regulatory
22         provision, or that it threatens an incipient violation of an antitrust law,
           or violates the policy or spirit of an antitrust law," *Durell v. Sharp*
23         *Healthcare*, 183 Cal. App. 4th 1350, 1366, 108 Cal. Rptr. 3d 682
           (2010)); (2) whether the practice is "immoral, unethical, oppressive,
24         unscrupulous or substantially injurious to consumers," *Morgan v.*
           *AT&T Wireless Servs., Inc*., 177 Cal. App. 4th 1235, 1254, 99 Cal.
25         Rptr. 3d 768 (2009); or (3) whether the practice's impact on the victim
           outweighs "the reasons, justifications and motives of the alleged
26         wrongdoer." *Id*.

27

28

1   *Doe,* 982 F.3d at 1215.  Nevertheless, the "traditional test for a consumer claim" is the second

2   identified, which this Court has consistently applied to evaluate claims for unfair practices.  *See*

3   *Obertman*, 482 F. Supp. 3d at 1017.

4         Plaintiffs do not clearly address this prong in their opposition.  (Doc. 180 at 19-19.)  In the

5   TAC, Plaintiffs seem to rely on the first and second traditional test identified in *Doe,* asserting the

6   activities of Defendants "constitute unfair practices" because they "violate the above-noted laws,

7   and/or violate an established public policy and/or the practice is immoral, unethical, oppressive,

8   unscrupulous and substantially injurious to Plaintiffs, the public, and the Class."  (Doc. 175 at 30,

9   ¶106.)  However, Plaintiffs merely parrot the identified test standards and do not allege any *facts* to

10   support their claims.  *Compare with McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1473

11   (2006) ("A business practice is unfair within the meaning of the UCL if it violates established public

12   policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which

13   outweighs its benefits").

14         Given the lack of factual allegations, Plaintiffs fail to state a claim under this prong.  *See Teton*

15   *Global Invs. LLC v. LC Inv. 2010,* 2021 WL 5861565, at *3 (S.D. Cal. Aug. 11, 2021) ("specific facts

16   must be pled to support a theory of an unfair business practice").

17                  2.    Fraudulent practices

18         A "fraudulent" act is "one which is likely to deceive the public," and "may be based on

19   misrepresentations … which are untrue, and also those which may be accurate on some level, but will

20   nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1474.  Thus, the word

21   "fraudulent" under Section 17200 "does not refer to the common law tort of fraud," *Puentes v. Wells*

22   *Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008), but still requires allegations that the

23   misrepresentation was directly related to injurious conduct, and that the claimant actually relied on

24   the alleged misrepresentation.  *In re Tobacco II Cases*, 46 Cal.4th 298, 336-37 (2009).  Further,

25   claims based upon the "fraudulent" prong are subject to the heightened pleading requirements of Rule

26   9(b) of the Federal Rules of Civil Procedure.  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1127 (9th

27   Cir. 2009).

28         Plaintiffs do not assert that any of the defendants acted with any intent to defraud class

1    members or identify any misrepresentations to employees who worked at Castlerock.  Although the

2    allegations in the TAC are sparce, it does not appear Plaintiffs seek to state a claim under the UCL to

3    the extent it is based upon the "fraudulent" acts prong.  (*See* Doc. 173 at 29-32 [not addressing any

4    misrepresentations]; Doc. 180 at 18-19 [addressing only the unlawful prong in Plaintiffs' opposition to

5    the pending motion].)

6                    3.    Unlawful practices

7            Plaintiffs seek to hold Defendants liable for "unlawful conduct" under Section 17200.  (Doc.

8    173 at 31, ¶ 110; *see also* Doc. 180 at 18-19.)  The business acts proscribed under the "unlawful"

9    prong of Section 17200 include "anything that can properly be called a business practice and that at

10   the same time is forbidden by law."  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992)

11   (quoting *Barquis v. Merchants Collection Assoc.*, 7 Cal.3d 94, 113 (1972)).  In essence, the UCL

12   "borrows violations of other laws and treats them as unlawful practices independently actionable

13   under Section 17200."  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) (internal

14   quotation marks, citation omitted).  Plaintiffs contend in the opposition that they "state a claim for

15   violation of the UCL," and address the unlawful prong.  (Doc. 180 at 18-19, emphasis omitted.)

16   Thus, the Court examines the sufficiency of the allegations to support the claim.

17           "To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate

18   violation, and (2) an accompanying economic injury caused by the violation."  *Aerojet Rocketdyne,*

19   *Inc. v. Global Aero., Inc*., 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020) (citation omitted); *see*

20   *also Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1554 (2007) ("a

21   violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong").

22   Predicate violations include "any practices forbidden by law, be it civil or criminal, federal, state, or

23   municipal, statutory, regulatory, or court-made."  *Saunders*, 27 Cal. App. 4th at 838-39.

24           A plaintiff must allege facts to support any alleged predicate violations of state and federal

25   law.  *See Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1554 (2007).  For

26   example, if a plaintiff alleges facts sufficient to support claims for violations of the FLSA and

27   California Labor Code, the federal and state statues are proper predicate violations under the UCL.

28   *See Duarte v. Mzr Inc*., 2010 WL 11586755, at *7 (N.D. Cal. July 8, 2010) (where the plaintiff

"allege[d] several violations of federal and state labor statutes, including the Fair Labor Standards Act and California Labor Code …, [the statutory claims] may serve as predicate violations under the 'unlawful' prong of the UCL").  Conversely, if a plaintiff fails to state a claim under a "borrowed" law, it cannot support the UCL claim.  *Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (a claim under the UCL "must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim").

Plaintiffs contend the "predicate act violations" that support their UCL claim include the "rest and meal period violations, reporting time violations, minimum wage, and unpaid 'off-the-clock' [work]."  (Doc. 173 at 32, ¶ 112.)  However, as discussed above, each of the plaintiffs failed to allege that either Castlerock or Good were his or her employer, and failed to allege facts sufficient to support the claims for minimum wages, reporting time wages, meal periods, rest breaks, and failure to pay wages due upon termination.  Consequently, these alleged violations cannot support their UCL claim.  *See Pellerin*, 877 F. Supp. 2d at 992; *Dooms v. Fed Home Loan Mortg. Corp.*, 2011 WL 1232989 at *21 (E.D. Cal. Mar. 31, 2011) ("[r]eliance on other invalid claims alleged in the complaint fails to support a viable UCL claim").

### 4.    Adequate legal remedy

Under the UCL claim, Plaintiffs indicate they "lack an adequate remedy at law to prevent the unfair business practices alleged herein and are entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damage, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits."  (Doc. 173 at 31, ¶ 107.)  In addition, Plaintiffs allege:

> As a result of their unlawful acts, Defendants have reaped and continue to reap unfair benefits and unlawful profits at the expense of Plaintiffs, and the Class they seek to represent. Defendants should be enjoined from this activity and made to disgorge these ill-gotten gains and restore to Plaintiffs and the members of the Plaintiff Class the wrongfully withheld wages under Business and Professions Code § 17203.

(*Id.*, ¶ 108.)  Plaintiffs seek injunctive relief, "prohibiting Defendant from requiring Plaintiffs and the Class they seek to represent to work "off the clock" without compensation, [and] prohibiting other wrongful conduct which is the subject of this Complaint and which may later be discovered in the course of litigation."  (*Id.*, at 31, ¶ 111.)  Finally, Plaintiffs request the Court "enjoin Defendants from

1    forbidding employees to leave the workplace during meal periods, and from continuing to fail to

2    provide rest periods and meal periods or provide appropriate compensation in lieu thereof." (*Id.*)

3    The requests for injunctive relief and disgorgement are also included in Plaintiffs' prayer for relief.

4    (*Id.* at 32-33.)

5            Seeking dismissal of UCL claim, Defendants argue that Plaintiffs fail to plead facts showing

6    that they lack an adequate remedy at law…." (Doc. 175-1 at 19, citing *Sonner v. Premier Nutrition*

7    *Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Mish v. TForce Freight, Inc.*, 2021 WL 4592124,

8    at *5 (N.D. Cal. Oct. 6, 2021).) According to Defendants, "*Mish* also teaches that where, as here, the

9    plaintiffs no longer work for the employer defendant, they cannot seek injunctive relief under the

10   UCL." (*Id.* at 20, n.6, citing *Mish*, 2021 WL 4592124, at *7.) Defendants contend that "Plaintiffs

11   have tried, but failed, to meet the pleading standard after Defendants made them aware of this

12   specific deficiency." (*Id.*)

13           Plaintiffs contend they properly seek injunctive relief and Defendants should not be permitted

14   to challenge the claim for injunctive relief "at this stage" and that the argument "is better suited for a

15   motion for preliminary injunction." (Doc. 180 at 19.) Plaintiffs maintain they would benefit from an

16   injunction given their occupations as seasonal migrant farmworkers. (*Id.*) Therefore, Plaintiffs assert

17   the Court should decline to dismiss this cause of action. (*Id.*)

18                        a.    *Injunctive relief*

19           Although Plaintiffs contend their ability to seek injunctive relief should be addressed with a

20   motion for preliminary injunction, the standing of plaintiffs to seek such relief is frequently addressed

21   on a motion to dismiss. *See, e.g., McCausland v. PepsiCo, Inc.*, 769 F. Supp. 3d 1060, 1065-66

22   (N.D. Cal. 2025) (observing that in a motion to dismiss, "the Court dismissed the plaintiffs claim for

23   injunctive relief for lack of standing with leave to amend, [upon] concluding that plaintiffs had not

24   alleged a concrete threat of future harm"); *Roper v. Big Heart Pet Brands*, 510 F. Supp. 3d 903, 915

25   (E.D. Cal. 2020) (addressing whether the plaintiff had standing to seek injunctive relief with a motion

26   to dismiss); *Derrick Byrd v. Masonite Corp.*, 215 F. Supp. 3d 859, 869 (C.D. Cal. 2016) (addressing

27   the standing of a former employee to seek injunctive relief on a motion to dismiss and motion to

28   strike). To this extent, Plaintiffs' assertion that the Court should refrain from addressing the issue at

1  the pleading stage is unavailing.

2      A state statute, such as California's Unfair Competition Law, cannot alter the constitutional

3  standing requirements of federal courts, even for public policy reasons. *See Hangarter v. Provident*

4  *Life & Accident Ins. Co*., 373 F.3d 998, 1022 (9th Cir. 2004).  The Ninth Circuit explained:

5          Even if Cal. Bus. & Prof. Code § 17204 permits a plaintiff to pursue
           injunctive relief in California state courts as a private attorney general
6          even though he or she currently suffers no individualized injury as a
           result of a defendant's conduct, a plaintiff whose cause of action
7          [under § 17204] is perfectly viable in state court under state law may
           nonetheless be foreclosed from litigating the same cause of action in
8          federal court, if he cannot demonstrate the requisite injury" to establish
           Article III standing.
9
   *Id.* (quoting *Lee v. American Nat'l Ins. Co*., 260 F.3d 997, 1001-1002 (9th Cir. 2001) (modification in
10
   original)). The Ninth Circuit observed that "Article III standing requires an injury that is actual or
11
   imminent, not conjectural or hypothetical," and a plaintiff seeking injunctive relief "must demonstrate
12
   a real or immediate threat of an irreparable injury."  *Id.* at 1021 (citation omitted, emphasis in
13
   original).  Without a "contractual relationship" between the parties, the Ninth Circuit found there was
14
   no personal threat of injury, and Hangarter lacked standing to pursue injunctive relief under
15
   California's Unfair Competition Law.  *Id.*
16
       In the employment context, the Ninth Circuit repeatedly applied this principal of standing and
17
   determined a "former employee has no claim for injunctive relief addressing the employment practices
18
   of a former employer absent a reasonably certain basis for concluding he or she has some personal
19
   need for prospective relief."  *Bayer v. Neiman Marcus Grp., Inc*., 861 F.3d 853, 864 (9th Cir. 2017);
20
   *see also Walsh v. Nevada Dep't of Human Res.,* 471 F.3d 1033, 1036-37 (9th Cir. 2006) (concluding
21
   that a plaintiff lacked standing for an injunction requiring her former employer to adopt and enforce
22
   lawful policies); *Slayman v. FedEx Ground Package System, Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014)
23
   ("Because none of the *Slayman* class's named plaintiffs worked for FedEx at the time the complaint
24
   was filed, the *Slayman* class lacked Article III standing to seek prospective relief.").
25
       District courts concluded similarly where—as here—plaintiffs seek injunctive relief mandating
26
   a former employer's compliance with the California Labor Code.  *See, e.g., Perez v. Leprino Foods*
27
   *Co.,* 2018 WL 1426561, at *6 (E.D. Cal. Mar. 22, 2018) (dismissing a demand for injunctive relief
28
   because "it is well-settled that former employees lack standing to seek injunctive relief to ensure their

1    former employers compliance with the California Labor Code") (internal quotation omitted); *Ahmed v.*

2    *W. Ref. Retail, LLC*, 2021 WL 2548958, at *7 (C.D. Cal. May 13, 2021) (dismissing a request for UCL

3    injunctive relief because Plaintiff, a former employee, failed to establish a "personal need for

4    prospective injunctive relief"); *Ramirez v. Manpower, Inc*., 2014 WL 116531, at *7 (N.D. Cal. Jan 13,

5    2014) ("a former employee lacks standing to seek prospective injunctive relief"); *see also Aldapa v.*

6    *Fowler Packing Co., Inc*., 323 F.R.D. 316, 330-331 (E.D. Cal. Jan. 24, 2018) (holding that a former

7    employee could not seek injunctive relief on behalf of a putative class of present employees).

8          Because Plaintiffs did not allege any facts sufficient to support a conclusion that they have a

9    need for *prospective* relief—or even could benefit from one against Defendants, as former

10   employees— they lack standing to purse injunctive relief.  *See Slayman*, 765 F.3d at 1048; *Walsh*, 471

11   F.3d at 1036-37; *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (2003) (prospective

12   injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be

13   met where there is no showing of any real or immediate threat that the plaintiff will be wronged

14   again…").  Accordingly, Plaintiffs' request for injunctive relief is dismissed with prejudice.

15                          *b.    Disgorgement*

16         Under California law, there are two types of disgorgement remedies: "restitutionary

17   disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which

18   focuses on the defendant's unjust enrichment."  *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800

19   (2015) (emphasis omitted).  The California Supreme Court determined that "while *restitutionary*

20   disgorgement may be an available remedy under the UCL, *nonrestitutionary* disgorgement is *not*

21   available in a UCL individual action or in a UCL representative action…." *Id.* (quoting *Madrid v.*

22   *Perot Systems Corp*., 130 Cal.App.4th 440, 460 (2005) [emphasis in original]); *see also Korea*

23   *Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1148 (2003) (explaining the court "never

24   approved of nonrestitutionay disgorgement of profits as a remedy under the UCL," and "prior cases

25   discussing the UCL … [were] referring to the restitutionary form of disgorgement").

26         As noted above, Plaintiffs request disgorgement under the UCL.  (Doc. 173 at 30-31, ¶¶ 108-

27   109.)  They seek "full restitution and/or disgorgement of wages which have been unlawfully withheld

28   from Plaintiffs and Class Members as a result of the business acts and practices described."  (*Id.*, ¶

109.)  However, Plaintiffs also allege that "Defendants have reaped and continue to reap unfair benefits and unlawful profits" and should be "enjoined from this activity and *made to disgorge these ill- gotten gain*s."  (*Id.* at 30, ¶ 108, emphasis added.)  Because this request focuses upon the alleged "unjust enrichment" of Defendants, it is an impermissible request for nonrestitutionary disgorgement. *See In re Tobacco Cases II*, 240 Cal. App. 4th at 800; *Korea Supply*, 29 Cal.4th at 1148.  As this remedy is unavailable under the UCL, the request for nonrestitutionary disgorgement is stricken.  *See, e.g., Henderson v. J.M. Smucker Co.*,  2011 WL 1050637, at *3 (C.D. Cal. Mar. 17, 2011) (striking a prayer for "disgorgement of the funds by which [the defendant] was unjustly enriched"); *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *7 (S.D. Cal. July 27, 2007) (striking "a request for disgorgement of revenues, earnings, profits, compensation and benefits" as an unavailable remedy under the UCL).

### M.    Remaining arguments

Defendants argue that "if the entire TAC is not dismissed, certain allegations should be struck," including the claims of the putative class.  (Doc. 175-1 at 20, emphasis omitted.)  The Court addressed the sufficiency of all causes of action in the TAC extensively above to evaluate the parties' motion and opposition.  Therefore, it declines to further discuss the claims previously dismissed above and the remaining arguments raised in the motion.

## V.    Leave to Amend

Plaintiffs request that if the Court finds the allegations are deficient, then leave to amend be granted.  (Doc. 180 at 24.)  Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad

faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

The Court has insufficient information to conclude that amendment is futile due to the sparsity of allegations in the complaint concerning Plaintiffs' employment with Defendants. In addition, amendment would allow Plaintiffs to clarify the basis for their belief that Defendants are joint employers, such that each defendant may be held liable for the alleged Labor Code violations. Further, it does not appear amendment would cause undue delay at this juncture, and there is no evidence before the Court suggesting Plaintiffs acted in bad faith. Thus, the request for leave to amend is granted and Plaintiffs will be given **a final opportunity** to amend their complaint and allege facts sufficient to support the claims raised in this matter. If Plaintiffs fail to allege sufficient facts in the fourth amended complaint, the Court will find they are unable to do so. *See Sonoma County Assoc. of Retired Emples. v. Sonoma County*., 708 F.3d 1109, 1117 (9th Cir. 2013).

## VI.      Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1.      Defendants' motion to dismiss (Doc. 175) is **GRANTED**, with leave to amend.

2.      Plaintiffs' prayer for injunctive relief is **DISMISSED**, without leave to amend.

3.      Plaintiffs' request for nonrestitutionary disgorgement is **STRICKEN**.

4.      Plaintiff SHALL file any Fourth Amended Complaint within 45 days of the date of service of this order. **Failure to comply with this order will result in the dismissal of the action for failure to prosecute.**

IT IS SO ORDERED.

Dated:    **October 1, 2025**

UNITED STATES DISTRICT JUDGE