**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA G. MORENO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CASTLEROCK FARMING AND TRANSPORT, INC., et al.,<br><br>Defendants. | Case No. 1:12-cv-00556 JLT CDB<br><br>ORDER GRANTING MOTION TO DISMISS OR STRIKE IN PART AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Docs. 131, 192) |

The plaintiffs in this case worked on vineyards owned by Albert L. Good and his company, Castlerock Farming and Transport, Inc. According to the complaint, Castlerock and Mr. Good paid workers less than the minimum wage, prevented them from taking meal and rest breaks, and gave them incomplete, late, or incorrect wage statements. Castlerock and Mr. Good move to dismiss the complaint or, alternatively, to strike some of its allegations as immaterial or impertinent. They have also moved for partial summary judgment on a statutory affirmative defense. The motion to dismiss or strike is **GRANTED IN PART**, and the motion for partial summary judgment is **DENIED**.

## BACKGROUND

This case has a long and complicated history. The Court has summarized that history in previous orders. It is not necessary to review it again. For now, it is enough to begin with an

order filed about a year ago. In that order, the Court granted the defendants' motion to dismiss the fourth iteration of the plaintiffs' complaint. (Doc. 184.) The plaintiffs had not made factual allegations to explain why Castlerock and Mr. Good were liable as their employers, rather than the various contractors who had arranged for the plaintiffs to work on Castlerock's property. (*See id.* at 12–15.) The plaintiffs had essentially lumped the defendants together, which they could not do under Rule 8. (*See id.* at 14–15.) A variety of other more granular shortcomings had also made it impossible to draw a plausible inference that Castlerock or Mr. Good had violated the law. (*See id.* at 15–39.)

The Court permitted the plaintiffs to amend their complaint, which they did. (*See* Docs. 184 at 39–40; 185.) After reviewing these further amendments, defense counsel believed that some of plaintiffs' new allegations contradicted the testimony that they had given in depositions, so the parties agreed that a fifth amendment would be appropriate. (*See* Doc. 188.) The Court approved their stipulation (*see* Doc. 189), and a fifth amended complaint was filed. It remains operative. (Doc. 191).

Castlerock and Good move again to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs have still offered only generic conclusions rather than factual allegations in support of their claims that Castlerock and Good were their employers and violated the law. (Doc. 191.) In the alternative, the defendants move to strike several of the plaintiffs' allegations under Rule 12(f), including their allegations about the propriety of a class action. (*See id.*) Joining that motion is defendant Melba Nuñez, a contractor who some of the plaintiffs worked for. (Doc. 194.)

The defendants have also moved for partial summary judgment with respect to the plaintiffs' claims about compensation for unpaid rest breaks and other "non-productive time." (Doc. 131.) A different contractor, defendant J.L. Padilla & Sons Labor Service, Inc. joins the summary judgment motion. (Doc. 132.) Most of the relevant evidence is not disputed, and the defendants' arguments are predominantly legal, so it is appropriate to take up that motion now.

The Court took both motions under submission after briefing was complete, without hearing oral arguments. (*See* Docs. 133–35, 192, 199–203.)

## MOTION TO DISMISS

A motion under Rule 12(b)(6) tests a complaint's "legal sufficiency," *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), that is, whether it is based on "a cognizable legal theory" and includes "sufficient facts" to support that theory, *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The district court's task is to decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### I. Were the defendants "employers" under California law?

As noted, the defendants contend at the threshold that the fifth amended complaint, like its predecessor, does not include allegations that could show Mr. Good and his company were the plaintiffs' employers. The "controlling case" on this question is the California Supreme Court's opinion in *Martinez v. Combs*. *Medina v. Equilon Enters., LLC*, 68 Cal. App. 5th 868, 874 (2021) (citing 49 Cal. 4th 35 (2010)). "Under *Martinez*, employer status for wage-and-hour purposes (including joint employer status) is controlled by the Industrial Welfare Commission's wage orders." *Id.* The wage orders define the verb "employ" in three parts: "(a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Martinez*, 49 Cal. 4th at 64 (emphasis in original); *see also Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1029 (9th Cir. 2019) (applying California law). This definition "has the obvious utility of reaching situations in which multiple entities control different aspects of the employment relationship, as when one entity, which hires and pays workers, places them with other entities that supervise the work." *Martinez*, 49 Cal. 4th at 59. But it "does not impose liability on individual corporate agents acting within the scope of their agency." *Id.* at 66.

Starting with the claims against Mr. Good, then, it would not be enough for the plaintiffs to allege that he was Castlerock's corporate agent. The plaintiffs must instead allege and ultimately prove that he was personally or individually their employer under the three-part definition above. *See Noe v. Superior Court*, 237 Cal. App. 4th 316, 333 (2015).

The complaint does not lay out a plausible case to that effect. The plaintiffs do not say that they spoke with Mr. Good, took instructions from him, saw him, or knew about him. They do not allege that he paid them personally or signed their checks. They do not allege that he created or enforced any particular policies. Their allegations are based instead on unspecified "information" and their "beliefs" about his involvement. They allege on information and belief, for example, that he "makes the majority of decisions regarding the work conditions, wages, and supervision" of the people who work on his vineyard. (*Id.* ¶¶ 84, 87.)

Federal courts do accept allegations "on information and belief" when it would be unreasonable to demand more; a defendant might be the only one with specific information, or it might be in a better position to know what happened and why. *See, e.g.*, *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022); *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). But conversely, if some fact is a matter of public record, or if it is otherwise clear that the plaintiff should be able to make a more direct allegation, then an allegation on information and belief is not appropriate. *See Waln*, 54 F.4th at 1161 (citing *Bertucelli v. Carreras*, 467 F.2d 214, 215 n.4 (9th Cir. 1972) (per curiam)); *see also, e.g.*, 5 Charles A. Wright, et al., Federal Practice and Procedure § 1224 (4th ed. 2022)). And in any case, a complaint must include "factual information that makes the inference of culpability plausible," *Waln*, 54 F.4th at 1161 (quoting *Park*, 851 F.3d at 928), so even an allegation on information and belief must be built on foundation of facts, *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

The complaint here does not include the sort of factual claims—the "information"—that might make it plausible to "believe" that Mr. Good employed the plaintiffs personally and directly. They acknowledge this much in their opposition brief, albeit implicitly, by arguing that they "have not had the benefit of discovery on this matter yet." (Doc. 200 at 17–18.) As the defendants point out, that is not exactly true. The plaintiffs have conducted discovery. (*See* Doc. 201 at 8.) They asked Mr. Good for information about his business and involvement in it years ago, in 2023. (*See id.*) But in any event, the plaintiffs' argument proves too much. If followed to its logical conclusion, it would demonstrate that a litigant could defeat virtually any Rule 12(b)(6)

motion by arguing that the truth will come out in discovery. That is not how the Federal Rules work. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. A plaintiff must have "enough facts to raise a reasonable expectation that discovery will reveal" the necessary evidence. *Twombly*, 550 U.S. at 556. The plaintiffs here do not allege the necessary facts.

Nor have the plaintiffs explained why it is unreasonable to demand more concrete and direct allegations than those they have offered. A variety of circumstances and evidence can show that a person was an "employer," from the location of the work to the names that appear on tax documents. *See, e.g.*, *Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1431–35 (2010) (summarizing and applying the three-part employment test, including many of the relevant factors). At least some of this information was likely within the plaintiffs' grasp, or even their first-hand knowledge. If this information had supported their claims, they could have added it to their complaint at this late stage. For these reasons, the complaint does not make a plausible case that Mr. Good was personally or individually the plaintiffs' employer.

The plaintiffs also contend that Mr. Good is liable based on their theory that he and Castlerock are really just the same person, legally speaking. (*See* Doc. 200 at 15–16.) If Castlerock was the plaintiffs' employer, and if it is the same "person" as Mr. Good for purposes of state law, then he would be their employer, too, or so the argument goes. (*See id.*)

Corporations like Castlerock ordinarily enjoy the "statutory privilege" of a "separate personality" from their owners, *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (citation omitted), but there is an exception to this general rule. A court can disregard a corporate entity and hold its individual owners liable in a few limited circumstances. *Id.*; *see also JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 189 (2023). This "alter ego" or "veil piercing" doctrine is "an extreme remedy," however, one that is only "sparingly used." *JPV*, 88 Cal. App. 5th at 189 (quoting *Highland Springs Conference & Training Ctr. v. City of Banning*, 244 Cal. App. 4th 267, 281 (2016)). The person who relies on it must ultimately prove not only that there is "a unity of interest and ownership," but also that safeguarding the corporation's separate identity

would lead to an injustice. *Id.*

The plaintiffs allege Mr. Good and his son are together the company's only owners (*id.* ¶ 84), but otherwise, they turn again to information-and-belief allegations to support their claim that Castlerock and Mr. Good are actually one and the same. They allege on information and belief, for example, that he determines whether the company makes a profit and how much, that the company exists only to supply labor to his vineyards, and that he deals directly with farm labor contractors. (*See* Doc. 191 ¶¶ 84–85.) The plaintiffs do not allege that the company disregards any corporate formalities, that Mr. Good commingles his own personal funds with the company's, or that their relationship exhibits any other telltale signs that the corporation is a mere shell. *See, e.g.*, *JPV*, 88 Cal. App. 5th at 194–95; *Automotriz*, 47 Cal. 2d at 796. Without allegations like these, the complaint does not make out a plausible claim of alter ego liability. *See, e.g.*, *Est. of Miller v. County of Sutter*, No. 20-00577, 2020 WL 6392565, at *6–7 (E.D. Cal. Oct. 30, 2020) (collecting and contrasting cases in which similar allegations fell short); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994) (describing "inadequate capitalization, commingling of assets, [and] disregard of corporate formalities" as "critical facts" in disputes about alter ego liability).

The plaintiffs argue in their opposition that they can show the company was Mr. Good's alter ego with facts that are not part of their complaint, but which are publicly available. They first cite a case in which Mr. Good alleged that he does business as "Castle Rock Vineyards." (*See* Doc. 200 at 17.) It is unclear how this information would help the plaintiffs show that the defendant in this case—"Castlerock Farming and Transportation, Inc.," not "Castle Rock Vineyards"—is Mr. Good's alter ego. They cite no relevant authority. The plaintiffs also request judicial notice of a "company snapshot" from the website of the U.S. Department of Transportation, which describes "Castlerock Farming & Transport, Inc." as the "DBA Name" of "Albert L. Good." (Doc. 200-2 at 27.) It can be appropriate to take judicial notice that a government agency has made a statement on its website, "[b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). It is unclear what the snapshot means, and it is unclear how it was

created and by whom. At most, then, the Court could take notice that the Department of Transportation reports that "Castlerock Farming & Transport, Inc." is a "DBA Name" for Mr. Good on its website, but not that this report is accurate or meaningful. *See Khoja*, 899 F.3d at 1001 (holding it is error to take judicial notice of the report by an administrative body when "there is a reasonable dispute as to what the report establishes").

With that said, even if Mr. Good had offered allegations that could show that he and Castlerock are truly one and the same, the complaint would still fall short. It lacks allegations that could demonstrate the necessary inequity or injustice, i.e., that Mr. Good has used his alleged alter ego "to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). The plaintiffs argue that if Mr. Good is dismissed from the case, then he might strip the company of its assets in an attempt to deprive the plaintiffs of any meaningful damages award. (*See* Doc. 200 at 16.) That is conceivable, but a conceivable possibility does not support a viable claim in a federal district court. *See Twombly*, 550 U.S. at 570. California courts have also held directly that "[t]he alter ego doctrine does not guard every unsatisfied creditor of a corporation." *Sonora Diamond*, 83 Cal. App. 4th at 539. The state law claims against Mr. Good are not viable and must be dismissed.

This leaves the claims against Castlerock. As was true of Mr. Good, the plaintiffs make many of their allegations against Castlerock "on information and belief." For example, they allege on information and belief that Castlerock instructed its contractors whether to pay the plaintiffs an hourly rate, a piece rate, or a hybrid rate, in addition to setting that rate. (Doc. 191 ¶ 88(a).) In other paragraphs they allege—sometimes using a parallel formulation, such as that they "believe, and based thereon allege"—that Castlerock decided whether it was time to harvest (*id.* ¶ 88(c)), when farm workers the plaintiffs would start and stop their shifts (*id.*), when they could take breaks (*id.* ¶ 88(d)), how and when they should clean their tools (*id.* ¶ 88(e)), and whether to impose discipline or fire them (*id.* ¶ 88(g)).

Castlerock, like Mr. Good, argues that these information-and-belief allegations are labels and conclusions that cannot alone withstand a motion to dismiss under Rule 12(b)(6). (*See, e.g.*,

Doc. 192-1 at 18–19). That might be true, but the complaint lays out more direct factual allegations as well:

- Supervisors told the plaintiffs and others that they were working for Castlerock. (*See, e.g.*, Doc. 191 ¶¶ 33, 89.)
- Castlerock supervisors instructed the plaintiffs and others how to do the job, and other supervisors only ever did as Castlerock told them. (*See, e.g.*, *id.* ¶ 8, 13, 20, 33, 54 88(h).)
- Castlerock supervisors had the authority to discipline and fire the plaintiffs and other people who were working for its contractors, and they exercised that authority. (*See, e.g.*, *id.* ¶¶ 32, 43, 54, 88(g).)
- Castlerock supervisors decided whether and when the plaintiffs could work on a given day, where (i.e., which fields), when they could take breaks, and when they could go home. (*See, e.g.*, *id.* ¶¶16, 24, 29, 48.)
- Castlerock set the plaintiffs' hourly wage "by reimbursing the [contractors'] costs, including labor costs, at minimum wage." (*See, e.g.*, *id.* ¶ 88(a).) Castlerock also decided which tasks were paid hourly, by the piece, or under a hybrid scheme and what the piece rate would be. (*See, e.g.*, *id.*)

Castlerock may dispute these allegations. It may contend that they are false. But at this stage, the Court must assume they are true, and they permit a plausible inference that Castlerock was an "employer" under state law because it exercised "control over the wages, hours or working conditions" on its vineyards. *Martinez*, 49 Cal. 4th at 64. As the California Supreme Court wrote in *Martinez*, a person can have more one "employer" if "multiple entities control different aspects of the employment relationship." *Id.* at 76. "This occurs, for example, when one entity . . . hires and pays a worker, and another entity supervises the work." *Id.* "Supervision of the work, in the specific sense of exercising control over how services are performed, is properly viewed as one of the 'working conditions' mentioned in the wage order." *Id.* (citation omitted).

In sum, the complaint includes factual allegations to show it is plausible that Castlerock

was the plaintiffs' "employer" for purposes of California law. The opposite is true with respect to Mr. Good. The state law claims against him are dismissed.

**II. Do the plaintiffs' claims fall short for other reasons?**

Beyond their potential employer status, Castlerock and Mr. Good (joined by Nuñez) also argue that the plaintiffs' allegations would fall short of supporting several of their claims on their own terms. Their motion focuses on claims one, four, five, six, and seven. The Court takes these claims in turn.

**A. Agricultural Workers Protection Act (Claim One)**

The plaintiffs' first claim is a federal claim based on the Migrant and Seasonal Agricultural Worker Protection Act. That law "identifies requirements and regulations for employers of agricultural workers." (Doc. 184 at 15.) Among other things, employers must not violate the terms of any "working arrangement" that was actually communicated between them and their employees. (*Id.* (citation and quotation marks omitted).)

The plaintiffs alleged in their previous complaint that the defendants displayed the IWC's wage orders on the job site and thus made those orders a "working arrangement," which they later violated. (*See id.* at 15–16.) The Court dismissed this claim. The plaintiffs did not allege that Castlerock or Mr. Good had posted a wage order or otherwise "communicated" the terms of any "working arrangement." (*Id.* at 16.)

The plaintiffs allege now "that the IWC Wage Orders were posted in the bathrooms," but only on information and belief. They do not explain why they cannot allege directly that wage orders were posted in the restrooms or anywhere else. They do not allege that they (or any other employees) saw the wage orders or notices. They do not argue in opposition to the defendants' motion that working arrangements were communicated in another way (*see* Doc. 200 at 19–20), so claim one is dismissed as to Mr. Good, Castlerock, and Nuñez.

**B. Meal and Rest Breaks (Claims Four and Five)**

Claims four and five are based on the plaintiffs' allegations that the defendants did not permit them to take meal and rest breaks at the times required by California law. The Court dismissed these claims in its previous order because the plaintiffs did not "identify who directed

them to remain on duty" during their breaks, did not explain "what tasks they were required to perform while remaining on duty," and did not allege that any of the plaintiffs were personally pressured to miss a break or actually missed a break. (*See* Doc. 184 at 25–26 (meal breaks); *id.* at 27 (rest breaks).)

The fifth amended complaint now includes more specific information about why the plaintiffs believe that Castlerock is responsible for their missed breaks. This includes their allegations, cited above, that their supervisors often spoke with Castlerock personnel before making decisions, only ever did what Castlerock said, followed Castlerock's instructions about when breaks should begin, and told some of the plaintiffs that they worked for Castlerock. They also explain now that they often missed breaks because they felt pressure to meet quotas and because they had often been working for more than five hours before their meal breaks began. (*See, e.g.*, Doc. 191 ¶ 17–19.)

Castlerock argues that it was the farm labor contractors who are to blame for any late or missed breaks, even by the plaintiffs' own allegation. (*See* Doc. 192-1 at 23.) The allegations it cites do not support that argument. (*See* Doc. 191 ¶ 88(d).) According to the complaint, Castlerock's policy was to follow a standardized set of timesheets unless doing so would violate the law, and Castlerock allegedly instructed its supervisors to ensure that workers took breaks on time. (*See id.*) In light of this alleged policy, Castlerock contends that if meal and rest breaks were skipped or late, then it must have been someone else's fault. (*See* Doc. 192-1 at 23.) Not necessarily: an employee can feel pressure to keep working even if the employer has a policy to provide breaks, and "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). The motion to dismiss claims four and five is denied as to Castlerock and Nuñez.

**C. Final Wages Due and Wage Statements (Claim Six and Seven)**

In claim six, the plaintiffs allege that Castlerock violated its obligation to promptly pay all wages due at termination. The Court dismissed this claim in its previous order because it was derivative of the plaintiffs' other claims, which the Court had also dismissed. (*See* Doc. 184 at

29–30.) At least some of those other claims are now viable, so the motion to dismiss claim six is denied as to Castlerock and Nuñez.

As an aside, there has been some uncertainty whether the plaintiffs quit. Castlerock argues they did not. It is not necessary to decide whether that is true. As discussed in the Court's previous order, "seasonal lay-offs from work at Castlerock constitute discharges" under section 201 of the state Labor Code, and penalties are available for discharged employees under section 203. (*Id.* at 29–30.)

In claim seven, the plaintiffs allege that they received inaccurate wage statements in violation of the Labor Code. The Court dismissed this claim in its previous order because the complaint did not allege which defendant provided the allegedly inaccurate wage statements. (*See id.* at 30–31.) The plaintiffs now allege that the farm labor contractors created the allegedly inaccurate statements and that Castlerock "ratified" or "approved" them. (*See, e.g.*, Doc. 191 ¶ 10.) Castlerock argues that it cannot be liable merely for ratifying or approving an inaccurate wage statement (*see* Doc. 192-1 at 25), but the cases it cites stand for a different and narrower rule, i.e., that a person is not an "employer" simply because he ratified another person's decision or is that person's agent (*see id.* at 20). The plaintiffs do not rely solely on their allegation that Castlerock ratified wage statements to show that Castlerock was their employer. As discussed above, they allege Castlerock was their employer for a variety of other reasons. The motion to dismiss claim seven is denied as to Castlerock and Nuñez.

**MOTION TO STRIKE**

Castlerock (joined by Nuñez) moves alternatively to strike the plaintiffs' request for civil penalties and their class allegations under Rule 12(f). The plaintiffs clarify in response that they oppose the motion to strike their class allegations, but that they are not seeking civil penalties. (*See* Doc. 200 at 26–27 & n.9.) Their request for civil penalties is therefore stricken as "impertinent." Fed. R. Civ. P. 12(f).

When it comes to the class allegations, motions to strike at the pleading stage are permitted but disfavored. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009). "Some discovery is usually necessary." *Barnes v. Coca-Cola Co.*, No. 22-01511,

2025 WL 1027431, at *3 (E.D. Cal. Apr. 7, 2025). District courts do, however, "have 'broad discretion to control the class certification process' even before the discovery process commences." *Id.* (quoting *Vinole*, 571 F.3d at 942). "A district court may strike class allegations before discovery when 'the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). That may be the case if the complaint lacks "factual support beyond a bare assertion that the plaintiffs bring claims on behalf of a class" or if there is "some obvious bar to the proposed class that is apparent on the face of the complaint." *Tirado v. Victoria's Secret Stores, LLC*, No. 21-00636, 2025 WL 859878, at *3–4 (E.D. Cal. Mar. 19, 2025) (citations and quotation marks omitted).

Castlerock argues that the complaint here exhibits both of these defects. (*See* Doc. 192-1 at 25–30.) It contends first that the complaint does not explain which proposed class members worked for which contractors, which class members were employed by multiple defendants jointly, why any particular defendant is responsible for any the alleged violations, and what facts could support the plaintiffs' more general assertions about common questions, typical claims and the superiority of class litigation. (*See id.* at 26–27.) The plaintiffs disagree. (*See* Doc. 200 at 27 & nn.10–11.)

The complaint is not as vague as Castlerock portrays it to be. The plaintiffs first allege that Castlerock worked with farm labor contractors to find and employ workers to harvest its grapes. (*See, e.g.*, Doc. 191 ¶ 78–81.) Second, as discussed in the previous section, the complaint includes allegations to support the plaintiffs' theory that Castlerock and its contractors were jointly their employers. Third, the plaintiffs allege Castlerock had common policies and followed common practices in its relationships with its contractors and the people who came to work on its vineyard. (*See, e.g.*, *id.* ¶ 88.) And fourth, the complaint describes these policies and practices and their effects, and it alleges that those policies and practices had illegal consequences. (*See, e.g.*, *id.* ¶¶ 8–20.) These allegations draw this case away from those in which other district courts have found a plaintiff's class allegations lacking at the pleading stage. *See, e.g.*, *Zamora v. Penske Truck Leasing Co., L.P.*, No. 20-02503, 2021 WL 809403, at *3

(C.D. Cal. Mar. 3, 2021) (no allegations to suggest that employees other than the plaintiffs also had to purchase their own tools and equipment); *Mish v. TForce Freight, Inc.*, No. 21-04094, 2021 WL 4592124, at *9 (N.D. Cal. Oct. 6, 2021) (no allegations to suggest that other employees followed the same procedure when clocking in or out or missed breaks for similar reasons).

Second, Castlerock argues that the plaintiffs' class allegations suffer from a fundamental legal defect. As Castlerock puts it, the plaintiffs should be "judicially estopped from attempting to represent a class of employees jointly employed by Castlerock and any [contractor] other than Padilla or Nuñez," the two contractors identified specifically in the complaint. (Doc. 192-1 at 27–28.) The plaintiffs again disagree. (Doc. 200 at 27 n.10.) Now is not the time to resolve this dispute. A few more details about the parties' previous motions and filings are necessary to explain why.

In 2024, Castlerock filed a motion for partial summary judgment. (Doc. 140.) Then, as now, the complaint included claims against Padilla (*see* Doc. 191 at 2), but at that time, the only plaintiffs who had worked for Padilla had been dismissed (*see* Doc. 140-1 at 3–5). Castlerock argued that without any Padilla employee as plaintiff, it could not be held liable based on a relationship it might have had with Padilla. (*See id.* at 2.) In response, the plaintiffs requested leave to amend their complaint to include claims by three people former Padilla employees. (*See* Doc. 148 at 3.) They argued that an amendment was necessary to "preserve the rights of the many farmworkers" who had been employed by Padilla, and they argued that without an amendment, their claims against Padilla would be "disposed of based on a technicality." (*Id.* at 8.) The Court granted the plaintiffs' request, and three former Padilla employees joined the case as named plaintiffs. (*See* Doc. 168.)

In Castlerock's assessment, the arguments the plaintiffs relied on in their request for leave to amend conflict with their class allegations. The reason is that the plaintiffs propose a class that would include people who worked for contractors other than Padilla and Nuñez (the two that employed the named plaintiffs). (*See* Doc. 191 ¶ 101.) Castlerock argues that if the plaintiffs think they can represent a class that includes people who worked for other contractors, then they did not need to amend their complaint to include claims by people who had worked for Padilla.

(*See* Doc. 192-1 at 28.) The plaintiffs who worked for Nuñez could have represented people who worked for Padilla. (*See id.*)

The plaintiffs see no inconsistency in their positions. (*See* Doc. 200 at 27 n.10.) It is one thing, they say, for them to argue that a person who worked for one contractor can represent people who worked for other contractors in a class action. (*See id.*) It was another thing for them to protest the summary adjudication of all claims against a particular contractor simply because no one who worked for that contractor was currently participating as a named plaintiff. (*See id.*) Or to put it simply, class certification is not summary judgment. (*See id.*)

It may be, at the end of the day, that the plaintiffs cannot represent a class of people who worked for contractors other than Nuñez and Padilla. That would likely be true if they cannot offer evidence to show that it was Castlerock's uniform policy to exert similar control over any employee, no matter who the contractor was. Now, however, the Court has only the complaint to consult, and it alleges that Castlerock's policy was uniform, as summarized above. In other words, judicial estoppel may be a "bar to the proposed class" when the plaintiffs' claims are put to the test in a motion for class certification, but that is not "apparent on the face of the complaint," so a motion to strike cannot be granted. *Tirado*, 2025 WL 859878, at *3–4. As usual, some discovery is necessary. *See Vinole*, 571 F.3d at 942). The better procedure for deciding whether the class definitions are appropriate is the procedure laid out specifically for that purpose in Rule 23. The motion to strike is denied in this respect.

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Finally, Castlerock (joined by Padilla) moves for partial summary judgment based on an affirmative defense. *See* 2015 Cal. Legis. Serv. Ch. 754, § 4 (A.B. 1513). Because the defendants would bear the burden to prove this defense at trial, they can obtain summary judgment only by proving it "beyond controversy." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per curiam) (citation omitted), *adopting* 202 F. Supp. 2d 1129 (C.D. Cal. 2002). The plaintiffs, by contrast, "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in [their] favor." *Id.* The Court must also take the evidence in the light most favorable to them. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

The affirmative defense in question is statutory. The California Legislature passed it in 2015, when it codified the Court of Appeal's previous holdings in *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013), and *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (2013). Under the court's opinions in those cases, piece-rate workers must be paid not only for the tasks they complete, but also "for each hour of 'nonproductive time'—time in which a worker was at work but not completing a task—and for rest, recovery, and meal periods." *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 812 (9th Cir. 2016).[1] The state legislature wanted to protect businesses against the unforeseen liability that this rule might impose upon them. *Id.* It therefore created a "safe harbor . . . against claims alleging failure to pay previously for nonproductive work time." *Id.* Employers could qualify for the safe harbor's protections by following a statutory process for paying "any minimum wage deficiencies occurring between July 1, 2012 and December 31, 2015." *Fower I*, 844 F.3d at 912 (citing Cal. Lab. Code § 226.2(b)(1)(A) (2016)).

The plaintiffs argue Castlerock and Padilla cannot rely on this safe harbor because it was repealed automatically in 2021, before Castlerock first asserted an affirmative defense under section 226.2 in its answer in April 2022. (*See* Docs. 83 at 18; 133 at 8–9.) Castlerock was not obligated to file its answer before then. A properly served Rule 12 motion postpones the deadline for the filer's responsive pleading until fourteen days after the court denies that motion. *See* Fed. R. Civ. P. 12(a)(4). Castlerock filed its answer and asserted its affirmative defense within fourteen days of the order denying a previous Rule 12 motion. (*See* Docs. 45, 54, 80, 83.) It would not have been reasonable to expect Castlerock to answer the complaint while its motion was pending. As it points out, filing an answer would have exposed it to the argument that its pending motion was moot. (*See* Doc. 135 at 6–7.) It is an even stranger thing to criticize Castlerock for not asserting an affirmative defense under section 226.2 before then. Castlerock

---

[1] In its opinion, cited as "*Fowler II*" in the remainder of this order, the Circuit reversed an order granting a motion to dismiss the complaint, cited here as "*Fowler I*" for ease of reference. *See* No. 16-0106, 2016 WL 3648963 (E.D. Cal. July 8, 2016). The district court's order on remand is cited as "*Fowler III*." *See* 674 F. Supp. 3d 851 (E.D. Cal. 2023).

filed its original motion to dismiss in 2014, before the affirmative defense was even on the books. (*See* Doc. 63.) Its answer, and thus its affirmative defense, was not too late. It may assert an affirmative defense under the now-repealed safe harbor in section 226.2 of the Labor Code.

Castlerock has offered unrebutted evidence to show both that it followed the statutory process while the safe harbor was in effect and that it paid the necessary sums before the applicable deadline, including for Padilla's employees. (*See* Doc. 131-3.) The plaintiffs do not dispute these assertions, but they argue that "[f]urther discovery is necessary to determine the accuracy" of Castlerock's calculations of unpaid minimum wages. (Doc. 133-2 at 2–3. This argument appears to invoke Federal Rule of Civil Procedure 56(d), which gives district courts the discretion to allow discovery in response to summary judgment motions, but only if the party requesting discovery "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Courts generally require the requesting party to "explain what further discovery would reveal that is essential to justify its opposition." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (alterations omitted) (quoting *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980)). The plaintiffs have not filed the required declaration, and they have not explained what evidence discovery would reveal. The facts are thus undisputed: Castlerock and Padilla are within the terms of the statutory affirmative defense.

But that is not the end of the story. The affirmative defense includes a carve-out, and on its face, this carve-out bars Castlerock and Padilla from relying on the affirmative defense:

> (g) The [affirmative defense] shall not apply to any of the following:
>
> . . .
>
> (2) Claims based on the failure to provide paid rest or recovery periods or pay for other nonproductive time for which all of the following are true:
>
> (A) The claim was asserted in a court pleading filed prior to March 1, 2014, or was asserted in an amendment to a claim that relates back to a court pleading filed prior to March 1, 2014, and the amendment or permission for amendment was filed prior to July 1, 2015.
>
> (B) The claim was asserted against a defendant named with

> specificity and joined as a defendant, other than as an unnamed (DOE) defendant pursuant to Section 474 of the Code of Civil Procedure, in the pleading referred to in Subparagraph (A), or another pleading or amendment filed in the same action prior to January 1, 2015.

Cal. Labor Code § 226.2(g)(2) (2016). Castlerock and Padilla agree that if this carve-out is enforceable, then it applies to this case and disqualifies them from relying on the statutory affirmative defense. (*See* Doc. 131-1 at 11). They argue that the carve-out is not enforceable because it is unconstitutional.

To understand their position, it is necessary to go back to 2015, when the Legislature was considering whether to adopt the affirmative defense in question. At the time, the United Farm Workers of America was pursuing class claims about non-productive time against three agricultural companies. *See Fowler II*, 844 F.3d at 813 (citing *Amaro v. Gerawan Farming, Inc.*, No. 14-00147 (E.D. Cal.); *Arredondo v. Delano Farms Company*, No. 09-01247 (E.D. Cal.) and *Aldapa v. Fowler Packing Co., Inc.*, No. 15-00420 (E.D. Cal.)). These companies could potentially have taken advantage of the affirmative defense under consideration, and there were reports that lawmakers added the carve-outs in an effort to secure the UFW's support. *See Fowler III*, 674 F. Supp. 3d at 874. The carve-outs were also drafted with uncanny specificity. For example, they include cutoff dates that corresponded to the filings dates in the three UFW cases within a matter of weeks or days. *See Fowler II*, 844 F.3d at 815.

The defendants in two of the three UFW cases challenged the carve-outs in a lawsuit of their own, suing the state's Labor Commissioner and the officers leading its Labor and Workforce Development Agency and Department of Industrial Relations. *See id.* at 811–12. They contended that it was unconstitutional (a violation of the Equal Protection Clause) for the state legislature to exclude them from the benefits of the affirmative defense it had created. *See id.* at 815. When the case reached the Ninth Circuit, the panel held that if "the only reason the carve-outs were included in the final bill was to procure the support of the UFW," then "that justification alone does not survive constitutional scrutiny." *Id.* The case had reached the Circuit on an appeal from an order granting a motion to dismiss, so the panel had only the complaint to consider, and it could "conceive of no other reason why the California legislature would choose

to carve out these three employers other than to respond to the demands of a political constituent." *Id.* This meant that the two companies had stated a claim and that the district court had been wrong to dismiss their complaint. *See id.*

On remand, the parties filed cross-motions for summary judgment based on a joint statement of stipulated facts. *See Fowler III*, 674 F. Supp. 3d at 856–57. The state officials argued that the legislature's reasons for passing the carve-outs were legitimate. *See id.* at 873. In their telling, lawmakers had "sought to protect expectations developed as a result of already-pending litigation," "to prevent unlimited relief to employers," and "to minimize the impact that a new affirmative defense would have on pending litigation." *Id.* at 873–74 (quotation marks and citation omitted). But the state officials did not dispute "that the specific time limitations ultimately adopted were necessary in order to garner the UFW's support of the legislation," and they offered no evidence to support their assertions about the legislature's legitimate rationale. *Id.* at 874. This meant it was undisputed that the legislature had purposefully and arbitrarily excluded the plaintiffs from the benefit of the safe harbor at the urging of a party in litigation against them. *See id.* at 875. The district court concluded that it had "no choice but to now find as a matter of law" that the carve-outs violated the Equal Protection Clause. *Id.*

Returning again to this case, Castlerock and Padilla argue that the carve-out is unconstitutional for essentially the same reasons. They acknowledge, as they must, that neither the Ninth Circuit's published opinion in *Fowler II* nor the district court's order on remand in *Fowler III* is controlling in the strictest sense. (*See* Doc. 135 at 2–4.) The Ninth Circuit decided only that the two businesses had stated a claim, not that anyone was entitled to judgment, *see Fowler II*, 844 F.3d at 814–16, and on remand, the district court adjudicated the case on a stipulation of facts that the parties in this case have not accepted as their own, *see Fowler III*, 674 F. Supp. 3d at 856–57. The defendants argue this Court should nevertheless adopt the reasoning in the two *Fowler* decisions and hold that the carveout in section 226.2(g)(2), quoted above, is unconstitutional just the same. (*See, e.g.*, Docs. 131-1 at 6; 135 at 2–4.)

Some of the defendants' arguments depend implicitly on the assumption that the final judgment in the *Fowler* case has a preclusive effect. They argue in their reply, for example, that

"[t]he gravamen of the Ninth Circuit's decision was that legislative action taken with the purpose of excluding [a particular employer] from the [affirmative defense] would be unconstitutional" no matter which employer "was caught in the same carve out." (Doc. 135 at 3.) They also contend similarly that the reasons for the legislature's actions are now effectively settled. (*See id.* at 5–6.)

If the defendants mean to contend that the judgment in *Fowler* precludes any of the claims, defenses, or issues in this case, then the Court cannot agree. The Supreme Court has defined two doctrines for assessing the preclusive effects of federal court judgments in federal question cases: "claim preclusion and issue preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 891–92 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 532 U.S. at 748–749).

These rules prevent litigants "from contesting matters that they have had a full and fair opportunity to litigate." *Id.* By the same token, they do not apply to someone who was not a party to the assertedly preclusive lawsuit, at least not ordinarily. *See id.* Enforcing them against nonparties would run up "against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). There are several exceptions to this rule, but none applies here. *See id.* at 893–95 (summarizing exceptions).

None of the parties to this case were parties to the *Fowler* case. The plaintiffs are thus right to point out that they had no opportunity to make their own case about the disputed carve-outs, and they are right to emphasize that the Ninth Circuit did not consider the implications of this case or the claims against Castlerock and Padilla when it issued its opinion in *Fowler II*. (*See* Doc. 133 at 5–6.) The final judgment in *Fowler* is not preclusive of claims or defenses that the parties assert in this case, nor of the factual issues they debate. This means, for example, that the

parties in this case are not bound to accept that "the specific time limitations ultimately adopted were necessary in order to garner the UFW's support of the legislation," as the parties stipulated on remand in *Fowler III*. 674 F. Supp. 3d at 874. Nor are the plaintiffs here bound by the state officials' failure to offer evidence to support their assertions about the rationale behind the carve-outs in *Fowler III*. *See id.*

The defendants' motion can be read alternatively as contending that the reasoning in *Fowler II* and *III* is binding and persuasive even if the final judgment is not preclusive. The defendants argue, for example, that the Ninth Circuit's opinion establishes "the legal parameters" for deciding whether the carve-out is unconstitutional. (Doc. 135 at 3).) That is true. *See Fowler II*, 844 F.3d at 815 (citing *Merrifield v. Lockyer*, 547 F.3d 978, 991–92 (9th Cir. 2008)). Its opinion is the law of the circuit, so to speak. *See Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013). The defendants are also right to argue that this Court is free to adopt the persuasive reasoning from the district court's order in *Fowler III* as its own. *Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001). But the plaintiffs are on just as solid ground when they emphasize that the Ninth Circuit was dealing only with allegations, not established facts, and that the district court's statements about the disputed carve-out in *Fowler III* were dicta. (*See* Doc. 133 at 5–7.) The company that had focused on that carve-out had been dismissed. (*See id.*)

The reconciliation of these conflicting positions begins with the basics. The constitutional rule in question is found in the Fourteenth Amendment, which prevents states from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. Am. XIV, § 1. In cases like this one, which is not about a suspect classification or a fundamental constitutional right, the court's task is to decide "if there is any reasonably conceivable state of facts that could provide a rational basis" for the distinction that the state has drawn. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). The Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* If there are "plausible reasons" for the state's actions, the constitutional "inquiry is at an end." *Id.* (citation and quotation marks omitted).

This is a famously forgiving standard. It is a "rare case" in which the facts preclude any "plausible inference" that the legislature's purposes were legitimate. *Nordlinger v. Hahn*, 505 U.S. 1, 16 (1992); *see also, e.g.*, *United States v. Skrmetti*, 605 U.S. 495, 522–25 (2025). When lawmakers decide who will be subject to a regulation or who will receive a particular benefit, they must inevitably include some people and exclude others. *See Beach Commc'ns.*, 508 U.S. at 315–16. "Such scope-of-coverage provisions are unavoidable components of most economic or social legislation." *Id.* at 316. "This necessity renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Id.*

Courts also "recognize, as stated in the famous quotation often attributed to Bismarck, that laws are like sausages, in that it is better not to see them being made." *Fowler II*, 844 F.3d at 815 n.3. That is one of the reasons why courts uphold statutes whenever they can "imagine any conceivable basis supporting a law, even if not advanced by the government," provided, of course, that the law does not infringe on a fundamental right or rely on suspect classifications, as is true in this case. *Id.* Any "plausible reasons" suffice. *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980). Under the Supreme Court's decisions, the correction of bad ideas and "improvident decisions" are left instead to "the democratic process." *Skrmetti*, 605 U.S. at 510 (quoting *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)).

With that said, governments "cannot hope to survive rational basis review by resorting to irrationality." *Merrifield v. Lockyer*, 547 F.3d 978, 991 (9th Cir. 2008). They cannot justify their actions with contradictory arguments that defeat themselves. *See id.* The Ninth Circuit has also concluded that "economic protectionism for the sake of economic protectionism is irrational" in the context of the Equal Protection Clause. *Id.* at 991 n.15.

This is what led the court to conclude in *Fowler II* that the plaintiffs had stated a claim. The defending state officials argued that the legislature's motives were benign, i.e., "to protect expectations developed as a result of already-pending litigation and to prevent unlimited relief to employers." 844 F.3d at 815. The Circuit did not question the legitimacy of this justification. *See id.* The problem was that it ran contrary the plaintiffs' plausible allegation—assumed true, at

that point—that the carve-out could be explained only as a concession to the UFW: irrational economic protectionism. *See id.*

Here, by contrast, the Court need not limit itself to the parties' allegations and denials, and it does not assume that the allegations in the pleadings are true. It must do just the opposite. Under Rule 56, the parties must cite "particular parts of the materials in the record." Fed. R. Civ. P. 56(c)(1)(A). As noted, it is the defendants who are seeking summary judgment here, so it is their burden to show beyond debate that the carve-outs are unconstitutional. *See S. Cal. Gas Co.*, 336 F.3d at 888. The carve-out is unconstitutional only if there is no "reasonably conceivable state of facts that could provide a rational basis" for the line that the legislature drew. *Beach Commc'ns*, 508 U.S. at 313. And as noted, this standard is so forgiving of state governments that it makes the carve-outs and many similar laws "virtually unreviewable." *Id.* at 316.

Putting these standards together, it is clear that the defendants' burden is uncommonly heavy. Their motion can be granted only if they prove a negative conclusively, i.e., that there is no reasonably conceivable state of facts that could provide a rational basis for the legislature to include the carve-out. They have not done this. The state's asserted justifications are more plausible in this case than they were in *Fowler II* and *III*. The defendants do not contend that the UFW is or was litigating this case against them when the legislature was considering the affirmative defense and the disputed carve-out. It is unclear why the legislature would have curried any favor with the UFW by preventing the defendants from asserting any affirmative defenses in this case, which does not involve the UFW. When it comes to this case, it is plausible that the legislature really was just trying to do as the government said in *Fowler II* and *III*: protect expectations "developed as a result of already-pending litigation," prevent "unlimited relief to employers" like Castlerock and Padilla, and minimize "the impact that a new affirmative defense would have on pending litigation." *Fowler III*, 674 F. Supp. 3d at 873–74. The defendants have not demonstrated that they are entitled to partial summary judgment as a matter of law, so the motion must be denied.

The plaintiffs contend that the Court should deny the motion for the independent reason that the defendants did not notify the Attorney General's office of their constitutional challenge

under this Court's Local Rules[2] or the Federal Rules of Civil Procedure.[3] (*See* Doc. 133 at 7.) It is not necessary to decide whether they are correct. The Court does not reach that issue.

**CONCLUSION**

1. The motion to dismiss or strike (Doc. 192) is **GRANTED IN PART** as follows:

   (1) All claims against defendant Albert L. Good are dismissed.

   (2) Claim one is dismissed as to defendants Castlerock and Nuñez.

   (3) The plaintiffs' request for statutory penalties is stricken.

   (4) The motion is otherwise denied.

Because the plaintiffs have had five opportunities to amend their complaint, and because this case has been pending for many years, the Court will not permit any further amendments to the complaint, as it warned in its previous order. (*See* Doc. 184 at 40.)

2. The motion for partial summary judgment (Doc. 131) is **DENIED**.

3. The matter is referred to the magistrate judge for further scheduling. **Within 14 days**, the parties **SHALL** file a joint status report detailing proposed dates and deadlines for the remainder of the case.

IT IS SO ORDERED.

Dated: October 21, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE

[2] *See* L.R. 132(b) ("If, at any time in an action to which neither a State nor any of its officers, agencies, or employees is a party, any party draws in issue the constitutionality of any state administrative regulation of general applicability, that party shall immediately file a notice identifying the regulation in issue and setting forth in what respects its constitutionality is questioned. Thereupon, or sua sponte, the Court shall serve a copy of that notice on the Attorney General of the State and on all other parties. If the party required to file and serve such a notice fails to do so, every other party shall file and serve such notice, provided that as soon as a notice is filed and served, all other parties are relieved of this obligation.").

[3] *See* Fed. R. Civ. P. 5.1(a) ("A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if: . . . (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and (2) serve the notice and paper . . . on the state attorney general if a state statute is questioned . . . either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.").